# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | CRIMINAL CASE NO: 1:23-CR-00139 |
| ) | |
| **CHRISTOPHER CARNELL, ET. AL.** ) | STATUS HEARING: AUGUST 11, 2023 |
| ) | |
| DEFENDANTS. ) | |

## MOTION TO DISMISS COUNT ONE

Count One of the Indictment charges Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2). Defendant Christopher Carnell ("Chris"), through counsel, moves to dismiss Count One pursuant to Rules 12(b)(1) and 12(b)(3)(B) of the Federal Rules of Criminal Procedure, as well as on the basis of Judge Walker's concurrence in the Court of Appeals decision in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023), and as violative of the Fifth Amendment's Due Process Clause.

---

**COUNT ONE**

On or about January 6, 2021, within the District of Columbia and elsewhere, **CHRISTOPHER CARNELL and DAVID WORTH BOWMAN**, attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.

---

**§ 1512. Tampering with a witness, victim, or an informant**

(c) Whoever corruptly--
   **(1)** alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
   **(2)** otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,
shall be fined under this title or imprisoned not more than 20 years, or both.

**BACKGROUND**

On April 26, 2023, the Government filed an Indictment against Chris and his

codefendant, charging the two young men, who were teenagers at the time of the offense, with

five misdemeanor counts and one felony count related to their entry into the Capitol Building on

January 6, 2021.

Count One of the Indictment charges Obstruction of an Official Proceeding, in violation

of 18 U.S.C. § 1512(c)(2), as well as aiding and abetting of the same under 18 U.S.C. § 2. The

text of the Indictment makes no reference to how any actions were those of aiding or abetting,

only alleging conduct evocative of § 1512(c)(2), stating —

> On or about January 6, 2021, within the District of Columbia and elsewhere,
> CHRISTOPHER CARNELL and DAVID WORTH BOWMAN, attempted to, and did,
> corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding
> before Congress, specifically, Congress's certification of the Electoral College vote as set
> out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §
> 15-18.
> (Obstruction of an Official Proceeding and Aiding and Abetting, in violation of Title 18,
> United States Code, Sections 1512(c)(2) and 2)

*See* ECF No. 2.

Count One contains no other allegations, is not preceded by a general facts section, and

does not cross-reference any other Counts.

For added context: Count Two of the Indictment charges 18 U.S.C. § 1752(a)(1),

Entering a Restricted Building or Grounds; Count Three charges 8 U.S.C. § 1752(a)(2),

Disorderly and Disruptive Conduct in a Restricted Building or Grounds; Count Four charges 40

U.S.C. § 5104(e)(2)(A), Entering and Remaining on the Floor of Congress; Count Five charges

40 U.S.C. §5104(e)(2)(D), Disorderly Conduct in a Capitol Building; Count Six charges 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building.

A conviction for Count One, under 18 U.S.C. § 1512(c) is a Class C felony pursuant to 18 U.S.C. § 3559, an offense punishable by up to 20 years in federal prison, up to 3 years of supervised release under 18 U.S.C. § 3583, up to 5 years of probation under 18 U.S.C. § 3561, up to a $250,000.00 fine under 18 U.S.C. § 3571, a special assessment of $100 under 18 U.S.C. § 3013, and the permanent deprivation of Second Amendment rights under 18 U.S.C. § 922(g)(1) (s*ee Scarborough v. United States*, 431 U.S. 563 (1977)). This list of penalties does not include state-level implications of a federal felony conviction, such as the loss of voting rights and the right to serve on a jury in some states. In summary, the offense is a very serious one. It is, by far, the most serious charge in the Indictment. (The other charges in the indictment are Class A and B misdemeanors.)

The Indictment, however, fails to state under what fact pattern the defendant is alleged to have violated 18 U.S.C. § 1512(c)(2) and fails to include all necessary elements of the offense. Notwithstanding the failure to include relevant facts, the Government also lacks the facts, as a matter of law, that could constitute a document-related crime under § 1512(c)(2).

Defendant, therefore, moves for dismissal of this Count for failure to state an offense under Fed. R. Crim. P. 12(b)(3)(B)(v), for lack of specificity under Fed. R. Crim. P. 12(b)(3)(B) (iii), for dismissal as a matter of law under Rule 12(b)(1), as well as on the basis of the Court of Appeals decision in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023), and as violative of the Fifth Amendment's Due Process Clause.

Since the Government failed to include a description of the facts in its Indictment, and because a motion to dismiss under Fed. R. Crim. P. 12(b)(3) is limited to the language of the indictment, discussion of additional facts not found in the Indictment would be outside the scope and parameters of argument on the issue of failure to state an offense under Fed. R. Crim. P. 12(b)(3)(B)(v) and for lack of specificity under Fed. R. Crim. P. 12(b)(3)(B)(iii). *See United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001). However, a motion to dismiss under Rule 12(b)(1) allows the district court to consider facts outside of an indictment pre-trial, to determine whether undisputed facts of the case render the underlying conduct insufficient as a matter of law to constitute the alleged criminal offense. *See United States v. Yakou*, 428 F.3d 241, 246 (D.C. Cir. 2005) (a district court may consider undisputed facts and dismiss an indictment before trial under Rule 12(b) based on a question of law). Arguments as to *United States v. Fischer* and as to a violation of the Fifth Amendment's Due Process Clause can also include consideration of the facts of the case that are outside the four corners of the Indictment.

**RELEVANT CASE FACTS**

Chris, an 18-year-old boy, planned with his friends to attend the January 6, 2021 protest in front of the Capitol. *See* ECF No. 1-1 at *3. He is alleged to have traveled with co-defendant David Bowman. At the rally, the boys allegedly followed protesters into the Capitol Building and wound up on the Senate floor at 2:49 p.m., after the Senators had left. *Id.* at *6, 9. (The Senate was evacuated around 2:20 PM, about 29 minutes prior to Chris entering the Senate Chamber. *See id.* at *1.) A video recording shows the two boys walking on the Senate floor. *Id.* at *6. The video turns to protesters rummaging through paperwork on the desks in the Senate Chamber. *Id.*

One of the adult protesters read out loud a document written by Senator Ted Cruz — "He was gonna sell us out all along—look! 'Objection to counting the electoral votes of the state of Arizona.'" *Id*. at *7. Chris, who was wearing a baseball cap and glasses, as well as a red backpack with his last name embroidered on it, appeared to respond, without touching that document, "Wait, no. That's a good thing. He's on our side. He's with us. He's with us." *Id*. He does not make contact with any documents and proceeds on his way.

The boys are then seen joining the crowd in the hallway of the Capitol, Chris allegedly joining in with a crowd chant. *Id*. at *8.

Chris did not commit any violent act and is not accused of any violent conduct. He did not touch anything inside the Capitol Building. Instead, he is charged with disorderly or disruptive conduct in Count Three and Count Five.


On December 1, 2022, two FBI agents interviewed Chris' co-defendant, David W. Bowman, who was 19 at the time that he entered the Capitol. According to the Government's summary of a recorded conversation between the FBI agents and Mr. Bowman:

> Bowman admitted that he and Carnell entered the U.S. Capitol Building and proceeded onto the Senate Floor on January 6, 2021. Bowman further stated that he was unaware of what was occurring within the Senate Chamber earlier in the day, but understood that Mike Pence needed to certify something in the House Chamber. Bowman explained that once he and Carnell actually entered the Senate Floor, they had no clear purpose or agenda. He stated, "like we are in here ... like uh ... we're a dog, we caught the car, we don't know what to do."

ECF No. 1-1 at *10. However, the recording of this interview tells a different story. The transcript of the relevant portion of the conversation between two FBI agents and Mr. Bowman is copied below:

FBI Agent (00:44:06):
So were you aware of what was going on earlier that day in the Capitol? Like official proceeding stuff?

Bowman (00:44:13):
Uh, in the house? I, I, there, there were senators in the other chamber.

FBI Agent (00:44:20):
Okay.

Bowman (00:44:22):
Uh, I, I don't even know, I don't know exactly

FBI Agent (00:44:29):
What process. You don't know the legal term or the process, but I don't know the process. But do you understand why they were there or what they were doing?

Bowman (00:44:34):
They were going to determine something that would've been very consequential for Trump.

FBI Agent (00:44:40):
I think you're right. Um, I think you're right.

Bowman (00:44:42):
That's why things were so heated.

FBI Agent (00:44:44):
Yeah. I think you're right. I, I, I too do not know the official legal proceedings, but I think that that was when they were certifying the, the electoral, you know, cuz you understand how elections work with, with, with, we vote for our candidate, but we don't really vote for our candidates, the electoral college that votes. And I think they certify that and they were doing it that day, which is the whole reason why January 6th. Why, why everybody was up there on January 6th. Right?

Bowman (00:45:13):
Yeah.

FBI Agent (00:45:13):
So when you went in the Senate chambers, were you just kind of being a lookie lou or were you like, hoping to disrupt that? Or what, what were you, what were you, what was your goal?

Bowman (00:45:24):
I mostly took pictures. I remember taking, uh, pictures. There was like a, there was like Somero Greek or Roman statue. Inside of the, it was a big, uh, it was like a centurion almost.

FBI Agent (00:45:38):
Okay. Inside the Senate chambers.

Bowman (00:45:39):
Mm. It was by it I think. It was near it. But I remember just taking pictures.

Second FBI Agent (00:45:51):
What was your intention from the get-go, did you guys [inaudible], and then since you were inside, from that point on, the intention changed?

Bowman (00:46:03):
Nothing.

Second FBI Agent (00:46:04):
Nothing, seemed crowd mentality?

Bowman (00:46:06):
No. It was like we, we were, we're in here. It was like, uh, it was like, uh, we're a dog. We, we got the car. We don't know what to do. I…

FBI Agent (00:46:18):
That's a great analogy. You know, I see that. Were you, to his question, to your point, uh, were, was there ever a moment where you're in there and you're like, oh shit, we caught the car.

Bowman (00:46:31):
… I remember…

FBI Agent (00:46:31):
…maybe I shouldn't have, maybe I shouldn't have been chasing it and maybe I need to leave?

Bowman (00:46:35):
On my way out. There were, uh, capitol policemen who, um, I remember this distinctly, or I remember that we asked them [inaudible]. I was like this. "Thank you."

FBI Agent (00:46:48):
You asked them how to get out, to leave the, to leave the capitol.

Bowman (00:46:51):
I don't know if I asked them, but they definitely told us where, which way in the hallways.[1]

## APPLICABLE PROCEDURAL LAW

Rule 12(b)(1) states: "A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Rule 12(b)(1) allows the district court to consider facts outside the four corners of the indictment in its dismissal of cases pre-trial and to dismiss the indictment "where the material facts are undisputed and only an issue of law is presented." See *United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005) (a district court may consider undisputed facts and dismiss an indictment before trial under Rule 12(b) based on a question of law); *United States v. Nitschke,* 843 F. Supp. 2d 4, 8-9 (D.D.C. 2011) (Judge Boasberg held that the government cannot prevent a pretrial dismissal of an indictment so long as the relevant facts are undisputed and only a question of law is presented); see also *United States v. Risk*, 843 F.2d 1059, 1061 (7th Cir. 1988) ("the government's own facts proffered to the defendant and the district court simply did not conform to the allegations in the indictment"); *United States v. Brown,* 925 F.2d 1301, 1304 (10th Cir. 1991) ("it is permissible and may be desirable where the facts are essentially undisputed, for the district court to examine the factual

---

[1] These statements were obtained from the co-defendant after an FBI Agent appeared to threaten his dog after coming into his house. From the recording of the conversation between two FBI Agents and Mr. Bowman, at timestamp 00:15:27, an FBI Agent states:
> … we're not the FBI that you see on tv, right? And the stuff you hear about in the news, there's this, this is not a Mar DeLago raid, right? There's no SWAT van outside. There's no AR-15s. We're not wearing, you know, raid vests or anything else. That's not what we're here to do. And hopefully, you'll understand. I hope to God this dog is, uh, friendly, right? … Okay… Cuz I'm pretty vulnerable. I'm a dog lover, but I'm pretty vulnerable right now.

predicate for an indictment to determine whether the elements of the criminal charge can be shown sufficiently for a submissible case"); *United States v. Hall*, 20 F.3d 1084 (10th Cir. 1994) (dismissing an indictment pursuant to Rule 12(b) based on undisputed evidence that the defendant was not present when the alleged crime was committed, establishing that he could not, as a matter of law, be charged with knowingly committing the indicted offense); *United States v. Levin*, 973 F.2d 463, 470 (6th Cir. 1992) (dismissal of an indictment is appropriate where undisputed facts showed that the government could not prove defendant's intent as a matter of law); *United States v. Phillips,* 367 F.3d 846, 855 & n. 25 (9th Cir. 2004). *Accord United States v. Chavez*, 460 F. Supp. 3d 1225 (D.N.M. 2020); *United States v. Lund*, No. CR16-4016-MWB (N.D. Iowa Mar. 15, 2016); *United States v. Marrowbone,* 102 F. Supp.3d 1101, 1105 (D.S.D. 2015); *United States v. Lafferty*, 608 F. Supp. 2d 1131 (D.S.D. 2009); *United States v. Edmonson*, 175 F. Supp. 2d 889 (S.D. Miss. 2001); *United States v. Rodriguez*, 931 F. Supp. 907 (D. Mass. 1996); *United States v. Brady*, 820 F. Supp. 1346 (D. Utah 1993).

Additionally or alternatively, the defendant moves to dismiss Count One based on a defect in the indictment pursuant to Fed R. Crim. P. 12(b)(3)(B). "The operative question is whether the allegations in the indictment, if proven, permit a jury to conclude that the defendant committed the criminal offense as charged." *United States v. Akinyoyenu,* 199 F. Supp. 3d. 109 (D.D.C. 2016); see also *United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015). Unlike review under Rule 12(b)(1), review of a motion to dismiss under Rule 12(b)(3)(B) requires the court to contain analysis to the four corners of the indictment.

The defendant also invokes his Fifth Amendment right to Due Process under the law, because, without proper notice to the defendant as to what is prohibited, an ambiguous law violates the Due Process Clause of the Fifth Amendment. Due to the plain ambiguity of the code section at issue, the Code fails to notify the Defendant as to the extent and nature of the prohibited activity, and the severe punishment that follows it. Courts cannot impose convictions or penalties in excess of the notifications listed in the Code without running afoul of the Fifth Amendment's Due Process Clause and the standard of fair notice to defendants. See *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574 (1996) ("Elementary notions of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose."); *Winters v. New York*, 333 U. S. 507, 515 (1948) ("The standards of certainty in statutes punishing for offenses is higher than in those depending primarily upon civil sanction for enforcement."); *United States v. Allen*, 983 F.3d 463, 472 (10th Cir. 2020) ("... the Due Process Clause requires that criminal laws have clear prohibitions and penalties, because persons 'of common intelligence cannot be required to guess' what conduct the law prohibits and what penalties apply when the law is violated."); *Lankford v. Idaho*, 500 U. S. 110 (1991) (due process violated because the defendant and his counsel did not have adequate notice that judge might impose death sentence); *Jones v. United States*, 526 U.S. 227 (1999). See also *United States v. Batchelder*, 442 U.S. 114, 121 (1979) (discussing the rule of lenity as it applies to sentencing and to substantive provisions used in determining penalties); *Miller v. Florida*, 482 U. S. 423 (1987) (Ex Post Facto Clause violated by the retroactive imposition of revised sentencing

guidelines that provided longer sentence for defendant's crime); *Bouie v. City of Columbia*, 378

U. S. 347 (1964) (retroactive application of new construction of statute violated due process).


**APPLICABLE PROVISIONS OF *UNITED STATES V. FISCHER***

In *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023), a three-judge panel of the D.C.

Circuit Court of Appeals issued a fractured, fragmented opinion on the scope of 18 U.S.C. §

1512(c)(2).

What is supposed to be the majority opinion, titled "Opinion for the Court," written by

Judge Pan, at first glance, appears to be supported by Judge Walker— that is, until Judge

Walker's Concurring Opinion makes it clear that his entire concurrence is expressly conditional

on a single issue: his decisive definition of "corruptly" — one that Judge Pan's opinion does not

agree to; and, Judge Pan's comments about Judge Walker's concurring opinion add to the

uncertainty of any concurrence between these two judges by making it clear that her opinion is

not at all based on the definition of "corruptly." The resulting majority opinion in *United States v.*

*Fischer* is thus only certain in portions where Judge Walker and Judge Pan agree. Accordingly,

*Fischer* is subject to reading under *Marks v. United States*, 430 U.S. 188 (1977). *See King v.*

*Palmer*, 950 F.2d 771, 780 (D.C. Cir. 1991) (en banc) (quoting *Marks*, 430 U.S. at 193) ("when

the [Supreme] Court issues fragmented opinions, the opinion of the Justices concurring in the

judgment on the 'narrowest grounds' should be regarded as the Court's holding").

The portions of their opinions where Judge Walker and Judge Pan agree, however, are

limited to the facts of the cases that were part of the Fischer appeal — cases where both § 1512

and § 111 were charged in the same indictment. Both Judge Walker's and Judge Pan's opinions

refer to assaults on law enforcement officers as a means to an obstructive end. The case at hand,

the case of Mr. Carnell, is not indicted along with a charge of assault on law enforcement. No

violent act was committed by either co-defendant. The opinions of Judge Walker and Judge Pan,

therefore, do not control the analysis for Mr. Carnell. *See Fischer,* 64 F. 4th at 362 (n.10)

(Walker, J., concurring in part and concurring in judgment) ("if a defendant is guilty under my

approach, he will be guilty under the lead opinion's[,] [b]ut some of the defendants guilty under

the lead opinion's approach will not be guilty under my approach"). Instead, it is another

majority that controls this situation under *Marks,* the opinions of Judge Walker and Judge Katsas.

And, the majority opinion of Judge Walker and Judge Katsas calls for a dismissal in this case.


**A. Review of Each Opinion**


    1) <u>Judge Pan</u>

Judge Pan's opinion holds, in summary, that Section 1512(c)(2) "appl[ies] to assaultive

conduct, committed in furtherance of an attempt to stop Congress from performing a

constitutionally required duty." *Fischer,* 64 F.4th at 331 (Pan, J.). She reaches this conclusion

through a "broad interpretation of the statute— encompassing all forms of obstructive acts." *Id*.

at 337. Judge Pan goes on to explain that "the sufficiency of the indictments ***in this case*** does not

turn on the precise definition of 'corruptly.'" *Id*. at 340 (emphasis added). Judge Pan also notes

that "[t]his opinion's holding on 'corruptly' is grounded in ***the mere sufficiency of the***

***allegations in this particular case,***" the cases of the three defendants whose cases were before

the Court of Appeals, and that she was looking only at "*the alleged conduct of the three appellees*." *Id.* at 341 (n.5) (emphasis added).

      2) <u>Judge Walker</u>

Judge Walker joins Judge Pan in judgment and he concurs in part, he claims, but explains that in order to concur with Judge Pan, his definition of "corruptly" must control, citing *Marks v. United States. Fischer,* 64 F. 4th at 351-52, 362 (n.10) (Walker, J., concurring in part and concurring in judgment). Judge Walker goes on to define "corruptly" as requiring proof of "an intent to procure an unlawful benefit". *Id.* at 352.

> Thus, "corruptly" in § 1512(c) means to act "with an intent to procure an unlawful benefit either for [oneself] or for some other person." *Marinello v. United States*, 138 S. Ct. 1101, 1114 (2018) (Thomas, J., dissenting) (cleaned up). It "requires proof that the defendant not only knew he was obtaining an 'unlawful benefit' but that his 'objective' or 'purpose' was to obtain that unlawful benefit." *Id.* And that benefit may be unlawful either because the benefit itself is not allowed by law, or because it was obtained by unlawful means. *Id.*

*Id.*

In Footnote 10 of his opinion, Judge Walker explains the narrowness and complexity of his position, which is termed as a *concurrence* but does not in fact appear to be one — an opinion in which he describes the *Fischer* holding as a "fractured decision" and "splintered decision":

> In other words, **my reading of "corruptly" is necessary to my vote to join the lead opinion's proposed holding** on "obstructs, influences, or impedes" an "official proceeding." 18 U.S.C. § 1512(c)(2). **If I did not read "corruptly" narrowly, I would join the dissenting opinion**. That's because giving "corruptly" its narrow, long-established meaning resolves otherwise compelling structural arguments for affirming the district court, as well as the Defendants' vagueness concerns. See *supra* Sections III & IV.
>
> My reading of "corruptly" may also be controlling, at least if a future panel analyzes this splintered decision under *Marks v. United States* — the test for deciding the holding of a

fractured Supreme Court judgment. 430 U.S. 188, 193 (1977); *see also Binderup v. Attorney General*, 836 F.3d 336, 356 (3d Cir. 2016) (en banc) (applying *Marks* to determine the "law of [the] Circuit").

Where, as here, "no single rationale explaining the result enjoys the assent of [a majority]" — and again, in my view, the rationale in **the lead opinion is not enough to uphold the indictments** — *Marks* says the court's holding is the "position taken" by the judge "who concurred in the judgments on the narrowest grounds." 430 U.S. at 193. The narrowest ground is a "logical subset of other, broader opinions." *King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991). It is a "middle ground" that "produce[s] results that" accord with "a subset of the results" intended by each opinion. *United States v. Duvall*, 740 F.3d 604, 610 (D.C. Cir. 2013) (Kavanaugh, J., concurring in denial of rehearing en banc).

That describes my position here. I read (c)(2) to cover only *some* of the conceivable defendants the lead opinion might allow a court to convict. So my opinion is a "logical subset of [an]other, broader opinion[ ]." *Id.* (cleaned up). In contrast, the lead opinion suggests three plausible readings, including mine. Lead Op. 17-18. It then says the Defendants' alleged conduct is sufficient "[u]nder all *those* formulations." *Id.* (emphasis added). Though the lead opinion says elsewhere that it "takes *no* position on the exact meaning of 'corruptly,'" it must take *some* position on it. Lead Op. 21 n.5. Without taking a position, the lead opinion could not conclude, as it does, that the indictments should be upheld.

Put differently, **if a defendant is guilty under my approach, he will be guilty under the lead opinion's. But some of the defendants guilty under the lead opinion's approach will not be guilty under my approach. Mine is the "position taken" by the panel member "who concurred in the judgment[] on the narrowest grounds."** *Marks*, 430 U.S. at 193.

That is not to say that a future panel will apply *Marks* to this decision. I express no opinion about whether it should. *Cf.* Richard M. Re, *Beyond the Marks Rule*, 132 Harv. L. Rev. 1942, 1944 (2019) ("the *Marks* rule has generated considerable confusion"). **But a future panel will need *some* rule to decide the holding of today's fractured decision, and the *Marks* rule would be an unsurprising choice.** *Id.* ("'the *Marks* rule' . . . has been used with increasing regularity").

One last thing. To the extent it matters — and it doesn't matter under *Marks* — the lead opinion and the dissent do not agree about (c)(2)'s mental state. *Cf. Marks*, 430 U.S. at 193 (looking to the opinions of only those Justices "who concurred in the judgments on the narrowest grounds"). Rather, the dissent expressly rejects the lead opinion's approach to "corruptly," suggesting that it raises "vagueness and overbreadth concerns." *See* Dissenting Op. 33.

*Fischer,* 64 F. 4th at 362 (n.10) (Walker, J., concurring in part and concurring in judgment) (emphasis added).

Judge Walker repeats this sentiment throughout his opinion:

◆ "Though the district court did not reach the meaning of "corruptly," we have no choice. As I will explain in Sections III and IV, **my vote to uphold the indictments depends on it**." 64 F. 4th at 352 (n.1).

◆ "**Because I read 'corruptly' as courts have read it for hundreds of years — and only because I read it that way — I concur in the Court's judgment**." 64 F. 4th at 362.

After clearly explaining the prerequisite condition under which he joins the lead opinion, *a condition that does not exist*, and after he states that the lead opinion is not enough to uphold the indictments, Judge Walker then bewilderingly and inappositely states, "I also join all but Section I.C.1 and footnote 8 of the lead opinion." *Fischer*, 64 F. 4th at 363 (Walker, J., concurring in part). Judge Walker's comment that "[i]f I did not read 'corruptly' narrowly, I would join the dissenting opinion," is even more puzzling, as Judge Katsas' dissenting opinion is in direct contrast to Judge Pan's opinion on every element except for, maybe, obstruction.

The basis of the concurrence, therefore, appears to be the precise fact pattern of the cases before the Court: "I thus concur in the Court's judgment and join the lead opinion's interpretation of (c)(2)'s act element." *Fischer*, 64 F. 4th at 363 (Walker, J., concurring in part). Judge Walker appears to affirm this when he notes that "it might be enough for the Government to prove that a

defendant used illegal means (like assaulting police officers) with the intent to procure a benefit (the presidency) for another person (Donald Trump)." *Id.* at 361.

Accordingly, Judge Walker's concurrence is limited only to the facts that are before the Court — indictments that charge both § 1512(c)(2) conduct and assaultive conduct. *See Fischer,* 64 F. 4th at 362 (n.10) (Walker, J., concurring in part and concurring in judgment) (referring to his concurrence as "my vote to uphold the indictments"); *Fischer,* 64 F. 4th at 341 (n.5) (Pan, J.) (Judge Pan discusses "the mere sufficiency of the allegations in this particular case" the cases of the three defendants whose cases were before the Court of Appeals).

### 3) Judge Katsas

Judge Katsas' dissent summarizes Judge Pan's opinion as one that boils down to rendering Section 1512(c)(2) into a lone-standing "catchall" that "criminaliz[es] any act that corruptly obstructs an official proceeding." *Fischer,* 64 F. 4th at 363 (Katsas, J., dissenting). Katsas' dissent takes the opposite view on the *actus reus* — that § 1512(c)(2) is limited by the preceding section, § 1512(c)(1), through both common English and through the broader text and structure of Section 1512. In Judge Katsas' view, "Congress limited the *actus reus* to conduct that impairs the integrity or availability of evidence." *Id.* at 382. Judge Katsas thus concluded that "conduct alleged here [assault on law enforcement] violates many criminal statutes, but section 1512(c) is not among them." *Id.* at 383.

**B. <u>Lack of a Majority Opinion Outside of Facts of the *Fischer* Case</u>**

Judges Katsas and Pan reach opposite conclusions because they define the term "otherwise" in opposite ways. As a result, Judge Walker's statement that he "would join the dissenting opinion" *but for* his definition of "corruptly" is inconsistent with the distinction between the Katsas and Pan opinions, which hinges on the *actus reus* term "otherwise," not on the *mens rea* term "corruptly"; and, the two opinions reach opposite conclusions on whether the *actus reus* alleged in the cases before the Court of Appeals violate section 1512(c)(2). See *Fischer,* 64 F. 4th at 341 (Pan, J.) ("Although the dissenting opinion disagrees with this opinion about the scope of the *actus reus* under § 1512(c), we share much common ground on the issue of *mens rea*.") Judge Walker's "concurring" opinion thus creates irreparable ambiguity and renders an "Opinion of the Court" nonexistent in *Fischer* — and therefore triggers analysis under *Marks. See King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991) (en banc) ("*Marks* is workable — one opinion can be meaningfully regarded as 'narrower' than another — only when one opinion is a logical subset of other, broader opinions").

In her response to Judge Walker, **Judge Pan appears to concede that there is no concurrence in this case**, stating in Footnote 5 of her opinion:

> … the instant case is a poor vehicle for applying *Marks.* First, the concurring opinion's attempt to establish its view as controlling must fail because a majority of the panel has expressly declined to endorse the concurrence's definition of "corruptly." *See supra* at 17–21; Dissenting Op. at 36–37 ("The concurrence's approach thus requires transplanting into section 1512(c)(2) a *mens rea* requirement that has been used so far only in tax law."). Second, the concurrence's definition is not one with which this opinion "must *necessarily agree as a logical consequence* of its own, broader position" because **this opinion takes *no* position on the exact meaning of "corruptly."** *King*, 950 F.2d at 782 (emphasis added). <u>**This opinion's holding on "corruptly" is grounded in the mere**</u>

> *sufficiency* **of the allegations in this particular case — it states only that the alleged conduct of the three appellees is sufficient under any understanding of "corrupt" intent**. *See supra* at 17–18, 21. By contrast, the concurring opinion goes further and affirmatively adopts a new test for "corrupt" intent that has not been requested by any party — that is not a "logical subset" of an opinion that expresses no preference for any definition of "corruptly." *See supra* at 18; *King*, 950 F.2d at 781; *cf. Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1337 (D.C. Cir. 2015) ("[N]either opinion can be considered the *Marks* middle ground or narrowest opinion, as the four Justices in dissent simply did not address the issue.").

*United States v. Fischer,* 64 F. 4th at 341 (n.5) (Pan, J.) (emphasis added).

Judge Walker states that, "my reading of 'corruptly' is necessary to my vote to join the lead opinion's proposed holding on 'obstructs, influences, or impedes' an 'official proceeding,'" while Judge Pan states that, "this opinion takes no position on the exact meaning of 'corruptly' … [t]his opinion's holding on 'corruptly' is grounded in the mere sufficiency of the **allegations in this particular case**…" — their disagreement dismantling the idea of a concurrence on any case outside the defendants before the Court. The concurrence, as a result, appears to be limited to *only* the judgment of the case at hand, one that affects only appellees Joseph Fischer, Edward Lang, and Garret Miller, and maybe other very similarly situated defendants.

What, then, is the opinion of the court in *United States v. Fischer*? Under what circumstances is an indictment sufficient as a matter of law? Where does *Marks* apply? These are difficult questions to answer. As Judge Walker stated in Footnote 10, "the lead opinion is not enough to uphold the indictments."

Only one scenario, a factual one, appears to have received two votes— a majority from a panel of three Court of Appeals judges — when an assault on law enforcement is alleged to have been committed together with an Obstruction of an Official Proceeding. See *Fischer,* 64 F.4th at

333 (Pan, J.); 64 F.4th at 361 (Walker, J.) (Concurring in part). Therefore, under *Fischer,* and when read through *Marks*, the grouping of assault and obstruction charges in a single indictment renders valid an indictment for a count of Obstruction of Official Proceeding. *See also* 64 F.4th at 361 (n.10) (Walker, J.) (Concurring in part) ("Mine is the 'position taken' by the panel member 'who concurred in the judgment[] on the narrowest grounds.' *Marks*, 430 U.S. at 193.").

The dueling footnotes — Footnote 10 of Judge Walker's opinion and Footnote 5 of Judge Pan's opinion — hold the key to understanding *United States v. Fischer* as a set of individual opinions without a true majority concurrence on any situation outside of the facts that were before the Court of Appeals in *Fischer*. Cases where § 1512(c)(2) is charged without assaultive conduct in the indictment are therefore not covered by *Fischer's* main opinion.

### C) <u>Application to Defendant's Case</u>

In the case pending before this Court, there is no evidence or allegation of assault to proceed under *Fischer* as read through *Marks*. Nor is there any evidence of document tampering, as Judge Katsas' opinion would require.

Due to the insurmountable inconsistencies between Judge Walker's Opinion and his claim that he joins Judge Pan's Opinion, the *Fischer opinion set* provides no comprehensive guidance to trial courts on what to do in a case like that of Christopher Carnell, a case in which an assault was not committed in furtherance of an allegation of Obstruction of an Official Proceeding, nor the impairment of any Congressional documents. There is no clearly stated

majority opinion from the Court of Appeals on a scenario in which a defendant is *not* accused of

committing a violent crime or document tampering in furtherance of the alleged Obstruction— a

seeming requirement of Judge Walker's concurrence with Judge Pan's judgment.

Nonetheless, there is an example in Judge Walker's concurrence that may provide *some*

*guidance* for this case:

> To illustrate how "corruptly" limits the reach of § 1512(c)(2), consider how it might
> apply to a hypothetical rioter on January 6th. This rioter joined the throng outside
> Congress because he was angry at the nation's elites. He saw the riot as an opportunity to
> display his bravado. Though likely guilty of other crimes, he did not act 'corruptly' under
> (c)(2) because he did not intend to procure a benefit by obstructing the Electoral College
> vote count.

*United States v. Fischer,* 64 F.4th at 358 (Walker, J., concurring in part).

As co-defendant Bowman told the FBI and the FBI summarized, **"once he and Carnell**

**actually entered the Senate Floor, they had no clear purpose or agenda."** ECF No. 1-1 at

*10. The recording of the conversation has an FBI Agent asking the co-defendant what was the

boys' goal, whether they intended to disrupt the proceedings. Mr. Boman answered that there was

no goal and that he just took pictures.

The Government, therefore, sought to charge their conduct as disorderly or disruptive,

instead of assaultive.

While not stating so explicitly, Judge Walker appears to describe disorderly or disruptive

participation in a rally as a "display [of] bravado" that does not amount to a felony under §

1512(c)(2). *See Fischer,* 64 F.4th at 358 (Walker, J., concurring in part). Going further, Katsas

explains that only "conduct that impairs the integrity or availability of evidence" can run afoul of this code section, as opposed to disruption, or even assault. *Fischer,* 64 F. 4th at 363 (Katsas, J., dissenting). In this case, it is undisputed that Mr. Carnell did not impair the integrity or availability of evidence, nor assault anyone. The most serious *actus reus* is described by the government as "Disorderly and Disruptive Conduct" in Count Three. As a result, and applying *Marks* to this scenario, it appears from the discussions by two judges of a three-judge panel that Chris Carnell's alleged conduct does not, and cannot, comport to amounting to a crime of § 1512(c)(2), as a matter of law. The *Fischer* majorites from Judge Walker and Judge Pan, and separately Judge Walker and Judge Katsas, require the conduct of (1) an assault on law enforcement *or* (2) the impairment of the integrity of a document, to be alleged in an indictment in order for the indictment to be sustained on a Motion to Dismiss. Both of these factors are missing from the case of Mr. Carnell.

Accordingly, Count One of the Indictment should be dismissed pursuant to Rules 12(b)(1) and 12(b)(3)(B) of the Federal Rules of Criminal Procedure, with the applicable law interpreted through Judge Walker's concurrence in the Court of Appeals decision in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023).

## STATUS OF THE *FISCHER* APPEAL

As of August 4, 2023, two of the Defendant Appellees in the *Fischer* case, Edward Lang and Garret Miller, petitioned the Supreme Court for a *writ of certiorari*.[2] *See United States v.*

---

[2] Available at https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/23-32.html and https://www.supremecourt.gov/search.aspx?filename=/docket/DocketFiles/html/Public/23-94.html

*Edward Jacob Lang*, 64 F.4th 329 (D.C. Cir. 2023), *petition for cert. filed*, (U.S. Jul. 7, 2023) (No. 23-32); *United States v. Garret Miller*, 64 F.4th 329 (D.C. Cir. 2023), *petition for cert. filed*, (U.S. Aug. 1, 2023)(No. 23-94). The Supreme Court has ordered the Government to file a response to the Edward Lang Petition by August 30, 2023.

Counsel for Mr. Carnell, on behalf of Mr. Carnell and a few other January 6 defendants, has drafted and is filing an *amicus curiae* brief in support of *certiorari* in the Edward Lang and Garret Miller cases. Counsel's brief is scheduled to be professionally printed on August 29, 2023.

The status of the *Fischer* case, therefore, is still active, and the Defendant Mr. Carnell has a direct, consequential, and active interest in the outcome of the Petitions that are pending before the Supreme Court.

**LENITY ARGUMENT**

The rule of lenity is clearly triggered by the ambiguities of Section 1512(c)(2).

Laws are written for laymen, not just for legal scholars. As Justice Douglass once stated: "The vice of vagueness in criminal statutes is the treachery they conceal either in determining what persons are included or what acts are prohibited. Words which are vague and fluid may be as much of a trap for the innocent as the ancient laws of Caligula." *United States v. Cardiff*, 344 U.S. 174, 175 (1952).

In the case of reading and interpreting Section 1512(c), **judges — legal scholars — have so far come to *four distinct opinions* on the meaning and applicability of this law**. One that is

joined by fourteen District Court judges and by Judge Pan, one distinct view by Judge Nichols, one distinct view from Judge Walker, and one distinct view from Judge Katsas. But what about laymen? What are people like the two teenagers charged for entering the Capitol on January 6, 2021, supposed to understand about this law? If scholars cannot agree — if judges cannot agree — how can these very young men be treated fairly under a law that is at the heart of an ongoing intellectual tug-of-war? Is not criminal law written for the common man?

The difference for Chris Carnell in the § 1512(c)(2) interpretation is the likely difference between a conviction for a misdemeanor offense or one for a felony; the difference between spending up to one year in prison as opposed to twenty; the difference between keeping his constitutional right to exercising his Second Amendment and losing this right if convicted of a felony, for the rest of his long life ahead. The definition of the words in this code section is the difference between two completely different futures for this young man.

Of course, uncertainty has a resolution built into the law through the rule of lenity. Lenity resolves any ambiguity in favor of the defendant. As does review under the Due Process Clause of the Fifth Amendment, which is directly implicated in seeking a conviction or punishment under § 1512(c)(2).

The rule of lenity directs courts to resolve such ambiguities in criminal laws in favor of the defendant. *Liparota v. United States*, 471 U.S. 419, 427 (1985). "'[N]o man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'" *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964) (quoting *United States v. Harriss*, 347 U. S. 612, 617 (1954)); *see also McBoyle v. United States*, 283 U.S. 25, 27 (1931) (refusing to expand a criminal statute's reach without "a fair warning ... given to the world in language the common

world will understand"). Withal, "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266 (1997) (describing lenity "as a sort of junior version of the vagueness doctrine" that "ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered" (citation and quotation marks omitted)). "[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Lanier*, 520 U.S. at 267. See also *Wooden v. United States*, 142 S. Ct. 1062, 1082 (2022) (Gorsuch, J., concurring) ("Lenity works to enforce the fair notice requirement by ensuring that an individual's liberty always prevails over ambiguous laws.").

In his dissent in *Fischer*, Judge Katsas wrote that he believes the rule of lenity applies to the § 1512(c)(2) analysis.

> If there were any remaining doubt, the rule of lenity would resolve this case for the defendants. At a high level of generality, the rule has provoked recent controversy. Some justices think it applies "[w]here the traditional tools of statutory interpretation yield no clear answer." *Wooden v. United States*, ___ U.S. ___, 142 S. Ct. 1063, 1085-86, 212 L.Ed.2d 187 (2022) (Gorsuch, J., concurring in the judgment). Others think it applies "only when after seizing everything from which aid can be derived, the statute is still grievously ambiguous." *Id*. at 1075 (Kavanaugh, J., concurring) (cleaned up). Regardless of that ongoing debate, the rule of lenity applies here.
>
> In the specific context of obstruction of justice, the Supreme Court repeatedly has emphasized the need for caution. For example, *Yates* involved another Sarbanes-Oxley provision that prohibits knowingly concealing or making a false entry in any record, document, or tangible object. 18 U.S.C. § 1519. The Court refused to construe the provision as "an all-encompassing ban on the spoliation of evidence," citing, among other factors, its "position within Chapter 73 of Title 18." 574 U.S. at 540, 135 S.Ct. 1074 (plurality); see also id. at 549-52, 135 S.Ct. 1074 (Alito, J., concurring in the judgment). In *Marinello*, the Court rejected a reading of the Internal Revenue Code that would "transform every violation of the Tax Code into an obstruction charge." 138 S. Ct. at 1110. And in *Arthur Andersen*, the Court held that "restraint [was] particularly

appropriate" to avoid reading an obstruction statute to criminalize comparatively innocuous acts of persuasion. 544 U.S. at 703-04, 125 S.Ct. 2129. In all three cases, the Court applied the rule of lenity. *See Yates*, 574 U.S. at 548, 135 S.Ct. 1074 (plurality); Marinello, 138 S. Ct. at 1106; *Arthur Andersen*, 544 U.S. at 703-04, 125 S.Ct. 2129. The Supreme Court's message in these and other cases has been "unmistakable: Courts should not assign federal criminal statutes a `breathtaking' scope when a narrower reading is reasonable." *United States v. Dubin*, 27 F.4th 1021, 1041 (5th Cir. 2022) (Costa, J., dissenting). By glossing over section 1512(c)(2)'s ambiguity and adopting an all-encompassing interpretation, my colleagues diverge from the approach reflected in these cases.

*United States v. Fischer*, 64 F.4th 329, 382-83 (D.C. Cir. 2023) (Katsas, J., dissenting).

The defendant urges this Court to apply lenity to the reading of § 1512(c)(2).

## CONCLUSION

The Indictment against the defendant does not present an allegation of, nor evidence of, an assault on law enforcement. This case does not present an allegation of, nor evidence of, impairing the integrity of any documents. The Indictment, accordingly, is insufficient as a matter of law. The defendants' conduct does not and could not amount to a felony Obstruction of an Official Proceeding under any two judges' opinions in the fractured decision of *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023). And, Judge Walker's concurrence in *Fischer* appears to indicate that disorderly and disruptive conduct would not constitute a crime under § 1512(c)(2), which, taken together with Judge Katsas' opinion, is a majority vote on this issue under a *Marks* analysis.

Accordingly, for any or for all of the reasons stated herein, Counts One of the Indictment should be dismissed.

Respectfully submitted,

By Counsel:

_____/s/_____
MARINA MEDVIN, ESQ.
*Counsel for Christopher Carnell*
MEDVIN LAW PLC
916 Prince Street
Alexandria, Virginia 22314
Tel:  888.886.4127
Email: contact@medvinlaw.com


**CERTIFICATE OF SERVICE FOR CM/ECF**

I hereby certify that on August 9, 2023, I will electronically file the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

_____/s/_____
Marina Medvin, Esq.