UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal Case No: 23-CR-139 (1) |
| ) | |
| CHRISTOPHER CARNELL, Et. Al., ) | Trial: February 12, 2024 |
| ) | |
| Defendant. ) | |

**CHRISTOPHER CARNELL'S MOTION TO SEVER TRIAL OR FOR ALTERNATIVE RELIEF**

Pursuant to Fed. R. Crim. Pro. 14(a), Christopher Carnell moves to sever his trial from that of co-defendant David Worth Bowman. Or, in the alternative, Mr. Carnell moves for a ruling permitting the use of an out-of-court statement made by Mr. Bowman in a joint trial. Co-defendant Mr. Bowman, through counsel, joins Mr. Carnell in both his Motion to Sever and his alternative motion to admit the out-of-court statement in a joint trial.

## BACKGROUND

Christopher Carnell and David Bowman are facing identical charges for their entry into the Capitol building on January 6, 2021. According to the Government's evidence, the two men, who were teenagers at the time and who knew each other, drove together from Raleigh, North Carolina to Washington D.C. on January 6 to participate in the pro-Trump rally announced by the President. Both teens followed the crowd into the Capitol Building and both entered the Senate floor, as seen on video recordings. Mr. Bowman is accused of taking photos of a document while on the Senate floor and Mr. Carnell is accused of making a comment to an unidentified person

who was rummaging through the papers on the desk in the Senate chamber. The two teens then exited the Capitol Building without further incident.

On December 1, 2022, almost two years later, the FBI interviewed Mr. Bowman in his home and surreptitiously recorded the conversation. In that conversation, Mr. Bowman commented on the state of mind and the intentions of both him and Mr. Carnell.

A transcript of the relevant portions is below:

> FBI Agent (00:44:06):
>
> So were you aware of what was going on earlier that day in the Capitol? Like official proceeding stuff?
>
> Bowman (00:44:13):
> Uh, in the house? I, I, there, there were senators in the other chamber.
>
> FBI Agent (00:44:20):
> Okay.
>
> Bowman (00:44:22):
> Uh, I, I don't even know, I don't know exactly
>
> FBI Agent (00:44:29):
> What process. You don't know the legal term or the process, but I don't know the process. But do you understand why they were there or what they were doing?
>
> Bowman (00:44:34):
> They were going to determine something that would've been very consequential for Trump.
>
> FBI Agent (00:44:40):
> I think you're right. Um, I think you're right.
>
> Bowman (00:44:42):
> That's why things were so heated.
>
> FBI Agent (00:44:44):
> Yeah. I think you're right. I, I, I too do not know the official legal proceedings, but I think that that was when they were certifying the, the electoral, you know, cuz

you understand how elections work with, with, with, we vote for our candidate, but we don't really vote for our candidates, the electoral college that votes. And I think they certify that and they were doing it that day, which is the whole reason why January 6th. Why, why everybody was up there on January 6th. Right?

Bowman (00:45:13):
Yeah.

FBI Agent (00:45:13):
So when you went in the Senate chambers, were you just kind of being a lookie lou or were you like, hoping to disrupt that? Or what, what were you, what were you, what was your goal?

Bowman (00:45:24):
I mostly took pictures. I remember taking, uh, pictures. There was like a, there was like Somero Greek or Roman statue. Inside of the, it was a big, uh, it was like a centurion almost.

FBI Agent (00:45:38):
Okay. Inside the Senate chambers.

Bowman (00:45:39):
Mm. It was by it I think. It was near it. But I remember just taking pictures.

Second FBI Agent (00:45:51):
What was your intention from the get-go, did you guys [inaudible], and then since you were inside, from that point on, the intention changed?

Bowman (00:46:03):
Nothing.

Second FBI Agent (00:46:04):
Nothing, seemed crowd mentality?

Bowman (00:46:06):
No. It was like we, we were, we're in here. It was like, uh, it was like, uh, we're a dog. We, we got the car. We don't know what to do. I…

FBI Agent (00:46:18):
That's a great analogy. You know, I see that. Were you, to his question, to your point, uh, were, was there ever a moment where you're in there and you're like, oh shit, we caught the car.

> Bowman (00:46:31):
> … I remember…
>
> FBI Agent (00:46:31):
> …maybe I shouldn't have, maybe I shouldn't have been chasing it and maybe I need to leave?
>
> Bowman (00:46:35):
> On my way out. There were, uh, capitol policemen who, um, I remember this distinctly, or I remember that we asked them [inaudible]. I was like this. "Thank you."
>
> FBI Agent (00:46:48):
> You asked them how to get out, to leave the, to leave the capitol.
>
> Bowman (00:46:51):
> I don't know if I asked them, but they definitely told us where, which way in the hallways.

Moreover, the FBI agents seized Mr. Bowman's phone and retrieved evidence that the Government plans to use against him at trial.

Mr. Carnell, on the other hand, did not make any statements to law enforcement. And, no evidence was recovered on Mr. Carnell's phone.

The statement of Mr. Bowman is favorable to the defendants as it reveals that the teenagers did not have a plan to enter the Capitol, nor a comprehensive understanding of the impact of their actions. The Government has advised defense counsel in a recent conference between the attorneys that it does not plan to introduce the statement made by Mr. Bowman and will object to the admissibility of Mr. Bowman's statement on the grounds of hearsay. Mr. Carnell, however, wishes to introduce the statement by Mr. Bowman or to call Mr. Bowman as a witness on his behalf in order to put forward a complete defense.

While the defense disagrees with the inadmissibility of the out-of-court statement by a co-defendant under Fed. R. Evid. 801(d)(2)(E) and Rule 803(3), Mr. Carnell would be rendered without recourse in a joint trial if this Court were to side with the Government on the admissibility question; for Mr. Carnell cannot use his Sixth Amendment right to call his witness, his co-defendant, to testify in a joint trial in order to cure the problem of potential inadmissibility of the out-of-court statement. Accordingly, these issues must be addressed *in limine* before trial to find a resolution

Therefore, because Mr. Carnell is prejudiced by the joinder of his trial with that of Mr. Bowman as it renders him unable to call Mr. Bowman as a witness, he invokes his right for relief under Rule 14(a) of the Federal Rules of Criminal Procedure, seeking severance of their trials. Alternatively, Mr. Carnell seeks an evidentiary ruling from this court permitting the use of Mr. Bowman's out-of-court statement.

## ARGUMENT

**I. Severance Based on Constitutional Grounds**

Rule 14(a) of the Federal Rules of Criminal Procedure provides that "if the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." The Supreme Court has imposed upon "the trial judge ... a continuing duty at all stages of the trial to grant a severance if prejudice does appear." *Schaffer v. United States*, 362 U.S. 511, 516 (1960).

Whether rooted directly in the Due Process Clause or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. *California v. Trombetta*, 467 U. S. 479, 485 (1984). Under the Compulsory Process Clause, a defendant has a right to call witnesses whose testimony is material and favorable to his defense. *United States v. Valenzuela-Bernal*, 458 U. S. 858, 867 (1982).

In this case, the joinder of defendants at trial violates Mr. Carnell's trial right to call his co-defendant as a witness in his defense even though Mr. Bowman's testimony is both material and favorable, and part of Mr. Carnell's defense. There is a serious risk of a joint trial depriving Mr. Carnell of his constitutional rights to present a complete defense and to call favorable witnesses. Mr. Carnell will need Mr. Bowman's exculpatory testimony to show that there was no advance plan for the young men to walk into the Capitol Building and that they did not intend to interfere with the proceedings of Congress. Moreover, his testimony will show that the men did not intend to act corruptly. They are simply two teenagers who got caught up in a crowd.

The Supreme Court has held that "a district court *should* grant a severance under Rule 14 only if there is a serious risk that a joint trial would *compromise a specific trial right of one of the defendants*, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993) (Emphasis added). Accordingly, severance in this case should be granted under *Zafiro* to avoid the "compromise" of his trial right to call witnesses on his behalf, and to present a complete defense.

Mr. Carnell has made a sufficient showing that he requires the testimony of his co-defendant in order to support his defense. *See United States v. Valenzuela-Bernal*, 458 U. S. 858,

867 (1982) (a defendant "must at least make some plausible showing of how their testimony would have been both material and favorable to his defense"). At a trial where both are defendants, the testimony of Mr. Bowman cannot be compelled. Therefore, Mr. Carnell requests a severance under Rule 14(a).

**II. Alternative — Admission of Out of Court Statements in a Joint Trial**

In the alternative, the defendant seeks to remedy the constitutional problem through an evidentiary ruling that permits the admission of the out-of-court statement of Mr. Bowman in a joint trial of the defendants.

Out-of-court statements only constitute hearsay when they are being admitted to prove the truth of the matter asserted in those statements. *See* Fed. R. Evid. 801(c). Nonetheless, Mr. Carnell seeks to use the statements for permissible non-hearsay purposes— as evidence of the young men's state of mind and intent. *See* Fed. R. Evid. 803(3). Moreover, because it's a statement made by Mr. Bowman, a co-defendant, the statement is not hearsay under Rule 801(d)(2)(E).

Judge Friedman has ruled that the use of a defendant's out-of-court statements is permissible when introduced by a defendant to prove his state of mind or intent. *See United States v. Warnagiris*, Case No. 21-0382 (PLF) (D.D.C. Oct. 24, 2023). And, in *United States v. Safavian*, 435 F. Supp. 2d 36 (D.D.C. 2006), Judge Friedman ruled that a co-conspirator's statements are a valid exception to the hearsay rule, citing Rule 801(d)(2)(E).

Furthermore, Mr. Bowman's out-of-court statements are admissible on independent grounds as impeachment evidence of the Government's witnesses, who will be presenting

evidence of the teenager's conduct and statements inside of the capitol in order for the Government to prove the element of intent. The statement of Mr. Bowman collected by the Government in their investigation directly contradicts the Government's argument about, and characterization of, intent.

If this Court still believes that the evidentiary admissibility arguments are more favorable to the Government, the Court can nonetheless admit the statement of Mr. Bowman in the joint trial through Rule 14(a) of the Federal Rules of Criminal Procedure, as it empowers a District Court to "provide any other relief that justice requires" in order to cure a trial joinder problem like the one presented in this case.

## CONCLUSION

WHEREFORE, the defendant asks that in order to preserve his trial rights under the Constitution, his trial be severed from that of his co-defendant pursuant to Rule 14(a) of the Federal Rules of Criminal Procedure, or in the alternative, to admit the out-of-court statement of Mr. Bowman in a joint trial of the defendants.

Rule 14(a) of the Federal Rules of Criminal Procedure empowers a District Court to "provide any other relief that justice requires."

Respectfully submitted,

By Counsel:

_____/s/_____
Marina Medvin, Esq.

*Counsel for Defendant*
MEDVIN LAW PLC
916 Prince Street
Alexandria, Virginia 22314
Tel: 888.886.4127
Email: contact@medvinlaw.com

**CERTIFICATE OF SERVICE FOR CM/ECF**

  I hereby certify that on December 14, 2023, I will electronically file the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

      /s/
Marina Medvin, Esq.