**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 23-cr-00139-BAH** |
| | : | |
| **CHRISTOPHER CARNELL, and** | : | |
| **DAVID WORTH BOWMAN,** | : | |
| | : | |
| **Defendants.** | : | |

**UNITED STATES' OMNIBUS MOTION IN LIMINE**
**TO ADMIT CERTAIN TYPES OF EVIDENCE**

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, respectfully submits this omnibus brief arguing motions *in limine* for

admission of evidence in advance of the trial, including: (1) police body worn camera footage,

surveillance taken from the United States Capitol closed circuit television (CCTV) system, and

open-source video footage, (2) statutes and congressional records, and (3) the restricted perimeter

photograph, which is a government exhibit routinely used in January 6 trials that provides an

aerial view of the Capitol grounds with a red line denoting the restricted area that was established

on January 6, 2021.[1]

The United States offers the authorities and analysis below to promote efficiency and

reduce the need to argue objections midtrial.  "Motions *in limine* are designed to narrow the

evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Barnes v. D.C.*, 924

F. Supp. 2d 74, 78 (D.D.C. 2013) (quoting *Graves v. District of Columbia*, 850 F.Supp.2d 6, 10

---

[1] The government moves *in limine* with respect to this exhibit because defense counsel herein has, in a number of his other January 6 cases, recently (and unsuccessfully) moved to preclude this exhibit.  *See, e.g., United States v. Warner,* Case No. 21-cr-00392-RCL, ECF No. 309 (denied in October 11, 2023 Minute Order).  Because the exhibit is a relevant, fair, and accurate demonstrative exhibit, it is plainly admissible.

(D.D.C. 2011)).  For each motion herein, the United States asks that the Court grant the requested relief or, if the Court reserves ruling, to consider the below arguments when the relevant issues arise during trial.

**I.      Motion *in Limine* to Admit Certain Categories of Multimedia Into Evidence.**

The United States will provide its preliminary exhibit list to the defendants and to the Court on or before the January19, 2024 deadline.  *See* August 14, 2023 Scheduling Order.  On this date,  the United States anticipates identifying, and providing to the defense, photographic and video exhibits that it intends to offer at trial.  The following sections describe certain categories of evidence and explain why each is admissible as relevant and authentic.

A.      <u>Legal Framework</u>

"Motions *in limine* are designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Barnes v. D.C.*, 924 F. Supp. 2d 74, 78 (D.D.C. 2013) (quoting Graves v. District of Columbia, 850 F.Supp.2d 6, 10 (D.D.C. 2011)).  "As a general rule, tangible evidence such as photographs must be properly identified or authenticated before being admitted into evidence at trial." *United States v. Blackwell*, 694 F.2d 1325, 1329 (D.C. Cir. 1982).  To satisfy this requirement, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a). Rule 901(b) provides a nonexhaustive list of examples of methods for showing authenticity. Those include, as relevant here:

> (1) Testimony of a Witness with Knowledge.  Testimony that an item is what it is claimed to be.
>  . . . .
> (3) Comparison by an Expert Witness or the Trier of Fact.  A comparison with an authenticated specimen by an expert witness or the trier of fact.
> (4) Distinctive Characteristics and the Like.  The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.
>  . . . .

(7) Evidence About Public Records.  Evidence that: (A) a document was recorded or filed in a public office as authorized by law; or (B) a purported public record or statement is from the office where items of this kind are kept.
 . . . .
(9) Evidence About a Process or System.  Evidence describing a process or system and showing that it produces an accurate result. Fed. R. Evid. 901(b).

In making the showing necessary for admissibility, "the proponent's 'burden of proof'" is "slight," and the "ultimate resolution of the evidence's authenticity is reserved for the jury." *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) (quoting *McQueeney v. Wilmington Tr. Co.*, 779 F.2d 916, 928 (3d Cir. 1985)); *see also United States v. Safavian*, 435 F. Supp. 2d 36, 38 (D.D.C. 2006).   To make the requisite prima facie showing, "circumstantial evidence of authenticity can be sufficient."  *United States v. Bruner*, 657 F.2d 1278, 1284 (D.C. Cir. 1981).  And such evidence need not "rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be," *Hassanshahi*, 195 F. Supp. 3d at 48 (quoting *United States v. Pluta*, 176 F.3d 43, 49 (2d Cir. 1999)).  Rather, the party offering the evidence need only "demonstrate that, as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated." *United States v. Celis*, 608 F.3d 818, 842 (D.C. Cir. 2010) (quoting *United States v. Stewart*, 104 F.3d 1377, 1383 (D.C. Cir. 1997)).

    B.    <u>Overlapping Bases for Admissibility of Multimedia</u>

As introduced herein, there are multiple, overlapping bases that the United States intends to use for the authentication and introduction of photographs and videos at trial.  The United States offers this nonexclusive list of bases for authentication should the United States be unable to enter into stipulations with the defendants in advance of trial.

    *1.  Authentication by a Witness with Knowledge*

To begin, any witness with knowledge of the events depicted in a photograph or video

can authenticate the evidence, including but not limited to the person who took the photograph or video. *See* Fed. R. Evid. 901(b)(1).  Here, that includes any person who was present for the events depicted in the photograph or video and has a recollection sufficient for them to recognize the scene depicted. *See, e.g.*, *Am. Wrecking Corp. v. Sec'y of Lab.*, 351 F.3d 1254, 1262 (D.C. Cir. 2003).  Any individual that observed the events depicted in the photograph or video can testify that the photograph or video appears to fairly and accurately show the events that took place. *See* FRE 901(b)(1); *see also United States v. Rembert*, 863 F.2d 1023, 1026 (D.C. Cir. 1988).

Even a person who was not present for a specific event can circumstantially establish the authenticity of a photograph or video depicting that event if they can (1) identify the location(s) depicted in the video; and (2) establish that the video is generally consistent with their knowledge of events that occurred during the Capitol riot. *See, e.g.*, *Rembert*, 863 F. 2d at 1028 ("Even if direct testimony as to foundation matters is absent . . . the contents of a photograph itself, together with such other circumstantial or indirect evidence as bears upon the issue, may serve to explain and authenticate a photograph sufficiently to justify its admission into evidence." (alteration in original) (quoting *United States v. Stearns*, 550 F.2d 1167, 1171 (9th Cir. 1977) (Kennedy, J.))); *United States v. Holmquist*, 36 F.3d 154, 169 (1st Cir. 1994) ("A photograph's contents, buttressed by indirect or circumstantial evidence, can form a sufficient basis for authentication even without the testimony of the photographer or some other person who was present at the time it was taken."). On this authority, the United States could authenticate riot footage through, for example, the testimony of an experienced U.S. Capitol Police officer who is familiar with all areas of the Capitol and who knows that the events of January 6 are unique in modern history. *Cf. Safavian*, 435 F. Supp. 2d at 40–42 (authenticating

emails based on "distinctive characteristics" and citing Fed. R. Evid. 901(b)(4)); *Klayman v. Judicial Watch*, 299 F. Supp. 3d 141, 145–46 (D.D.C. 2018) (admitting emails and advertisements by comparing later versions with admitted versions).  Again, this is a low bar that requires only a prima facie showing that the evidence is what the United States purports it to be— namely, photographs and videos of the Capitol siege in progress.

### 2.  Authentication by Metadata

Where necessary, the United States can also authenticate a photograph or video using metadata.  When a digital media file is extracted from a device or otherwise seized by the government, it often contains metadata that specifies the time, and sometimes place, the file was created, along with other information.  At trial, the United States will sometimes call law enforcement personnel to testify about the process of extracting data from digital devices and reviewing the extracted materials.  Such testimony is sufficient to make a prima facie showing that a photograph or video was made at the time or place reflected in the metadata. *See, e.g.*, *United States v. Banks*, 43 F.4th 912, 918 (8th Cir. 2022) ("While the officers were not present when the images and videos were first captured, their testimony [about reviewing extraction reports] provided a rational basis to believe that the exhibits had been created within the relevant time frame and stored on [the defendant's] cellular phones."); *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 547–48 (D. Md. 2007) ("Because metadata shows the date, time and identity of the creator of an electronic record, as well as all changes made to it, metadata is a distinctive characteristic of all electronic evidence that can be used to authenticate it under Rule 901(b)(4)."); *United States v. Gilbreath*, No. 3:19-CR-127-TAV-HBG, 2020 WL 5441226, at *3 (E.D. Tenn. Sept. 10, 2020) ("Metadata […] showed that these images were created at defendant's home and on defendant's cell phone on September 12, 2015.").

### 3. Authentication by Comparison

Similarly and alternatively, in instances where precision of time and place is relevant but cannot be established by a witness with knowledge or by the media's metadata, the United States will authenticate exhibits by reference to other, already-authenticated exhibits depicting the same time and place.  This method of "[a]uthentication by comparison is routine." *Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th 1364, 1371 (Fed. Cir. 2021); *see also United States v. Hoyt*, 946 F.2d 127, at *1 (D.C. Cir. 1991) (unpublished) (noting that Fed. R. Evid. 901(b)(3) permits authentication by comparison); *Stearns*, 550 F.2d at 1171 (finding that first picture "authenticates the other four pictures as to time"); *Safavian*, 435 F. Supp. 2d at 40 (allowing authentication of emails by means of comparison with other "e-mails that already have been independently authenticated").

### 4. Authentication Based on a Process or System that Produces an Accurate Result

Certain multimedia, such as security cameras (CCTV) operated by the U.S. Capitol Police (USCP) and body-worn cameras (BWC) worn by officers of the Metropolitan Police Department (MPD) can be authenticated by "describing a process or system and showing that it produces an accurate result," Fed. R. Evid 901(b)(9).  *See United States v. Dale*, 991 F.2d 819, 843 (D.C. Cir. 1993) ("Tapes may be authenticated by testimony describing the process or system that created the tape."); *United States v. Pinke*, 614 F. App'x 651, 653 (4th Cir. 2015) (unpublished) (finding "sufficient evidence of authentication" of a prison's closed circuit video where "a Government witness explained the manner in which the prison's closed circuit video system operates, the means by which he obtained the video, and that he downloaded it onto the DVD that was played for the jury.").  USCP and MPD witnesses to be called by the United States are available to testify to the systems employed by USCP and MPD, respectively.  These

witnesses will be able to explain how the system is used, that it reliably records and depicts the areas that the camera faces, and the internal characteristics of videos—such as date and time stamps—which allow USCP and MPD to identify and retrieve segments of video.

*5.  Authentication Based on Status as an "Official Publication"*

Certain evidence in this case, such as video taken by the Senate Recording Studio, is also "self-authenticating," meaning it "require[s] no extrinsic evidence of authenticity in order to be admitted." Fed. R. Evid. 902.[2] This is so because it qualifies as an "Official Publication[]," defined as any "book, pamphlet, or other publication purporting to be issued by a public authority." Fed. R. Evid. 902(5).  Official materials published on government websites fall into this category and are self-authenticating under Rule 902. *See Williams v. Long*, 585 F. Supp. 2d 679, 685–90 (D. Md. 2008); *cf. MMA Consultants 1, Inc. v. Republic of Peru*, 245 F. Supp. 3d 486, 503–04 (S.D.N.Y. 2017) (Congressional transcripts); *Singletary v. Howard Univ.*, No. 1:17-cv-01198, 2018 WL 4623569, at *4 n.1 (D.D.C., Sept. 26, 2018) (government-issued guidebook), *rev'd on other grounds*, 939 F.3d 287.

The United States Senate uses the Senate Recording Studio to contemporaneously record Senate proceedings and distribute those recordings to the public. *See* https://www.senate.gov/– floor/, last accessed Dec. 15, 2022 (publicly available archived recordings of Senate Recording Studio).  The Senate Recording Studio recorded the proceedings relating to the Electoral College Certification on January 6, 2021, up to the point when the rioters breached the building and forced the proceedings into recess. *See id.*, January 6, 2021. Subsequently, the Senate Recording Studio recorded the Electoral College Certification

---

[2] Further underscoring the multiple paths to authentication, the Senate Recording Studio footage may also be authenticated through any of the mechanisms outlined in this motion, including Fed. R. Evid. 901(b)(1), (3), (4), (9).

proceedings after the rioters were cleared from the Capitol Building and the session resumed. *Id.* During the interim, the Senate Recording Studio captured footage of rioters who were present on the Senate floor during the recess.

C.      Categories of Multimedia To Be Offered

The United States plans to introduce videos and photos recovered from the defendants' phones and social media accounts, as well as videos and photographs taken by third parties such as other rioters and journalists who were present inside and outside the Capitol on January 6. Among other ways, these materials can be authenticated through the processes described above.

The evidence at trial will also include video captured by law enforcement, including CCTV and BWC footage. Like any other videos, these can be authenticated by any person with direct knowledge of the scene depicted or with sufficient circumstantial knowledge, *see* Fed. R. Evid. 901(b)(1), or through metadata or comparison, *see* Fed. R. Evid. 901(b)(4). Alternatively, given the automated nature of the recording devices in question, the BWC and CCTV footage can be authenticated under Rule 901(b)(9), which allows authentication by "[e]vidence describing a process or system and showing that it produces an accurate result." Fed. R. Evid. 901(b)(9); *see Dale*, 991 F.2d at 843; *Pinke*, 614 F. App'x at 653.

The United States also anticipates introducing videos captured by the Senate Recording Studio, which videos can be authenticated through any of the processes described above.

**II.    Motion *in Limine* to Admit Certain Statutes and Records.**

A.      Judicial Notice of the Federal Electoral College Certification Law

The proceedings that took place on January 6, 2021, were mandated by, and directed under the authority of, several constitutional and federal statutory provisions. In fact, as Vice President Pence gaveled the Senate to Order on January 6, 2021 to proceed with the

Electoral College Certification Official Proceeding, he quoted directly from, and cited to, Title 3, United States Code, Section 17.

The United States requests that the Court take judicial notice of, and admit into evidence, copies of Article II, Section 1 of the Constitution of the United States, the Twelfth Amendment, as well as 3 U.S.C. §§ 15–18 relating to the Electoral College Certification Official Proceedings. It is well established that district courts may take judicial notice of law "without plea or proof." *See United States v. Davila-Nieves*, 670 F.3d 1, 7 (1st Cir. 2012) (quoting *Getty Petroleum Mktg., Inc. v. Capital Terminal Co.*, 391 F.3d 312, 320 (1st Cir. 2004)). The United States makes this request even though "no motion is required in order for the court to take judicial notice." *Moore v. Reno*, No. 00-5180, 2000 WL 1838862, at \*1 (D.D.C. Nov. 14, 2000). Further, "where a federal prosecution hinges on an interpretation or application of state law, it is the district court's function to explain the relevant state law to the jury." *See United States v. Fazal-Ur-Raheman-Fazal*, 355 F.3d 40, 49 (1st Cir. 2004).

B.  Admission of the Congressional Record and S. Con. Res 1

The Congressional proceedings on January 6, 2021, were memorialized in the Congressional Record. The Congressional Record is a public record under Federal Rule of Evidence 902(5). *See MMA Consultants*, 245 F. Supp. 3d at 503–04. The United States intends to introduce portions of the Congressional Record at trial, including the bodies' "concurrent resolution to provide for the counting on January 6, 2021, of the electoral votes for President and Vice President of the United States," S. Con. Res. 1, 117th Cong. (2021). For the same reasons as the Senate Recording Studios footage above, these records should be admitted as self-authenticating.

### III.   Motion *in Limine* to Admit Government's Restricted Perimeter Photograph Exhibit.

As is the case with most January 6 defendants, these defendants, too, have been charged with a number of crimes that took place within a restricted area around the U.S. Capitol building and its grounds.  Counsel for defendant Bowman has, in other January 6 cases, moved *in limine* to exclude the government's restricted perimeter photographs.  *See, e.g., United States v. Warner*, Case No. 21-cr-00392-RCL, ECF No. 309 (denied in October 11, 2023 Minute Order).  For the same reasons counsel's motion has been rejected previously, any similar argument should be rejected here, too.

### A.   The Photograph is Admissible Because it is Relevant, Fair, and Accurate.

The aerial photograph is clearly relevant. The defendants are charged with violating 18 U.S.C. §§ 1752(a)(1) and (a)(2), offenses that involve defendants' presence within the restricted area where the Vice President was temporarily visiting the Capitol on January 6, 2021 for proceedings to certify the Electoral College vote. The photograph is an aerial view of the Capitol building and grounds, and the red line denotes the location of barriers on the outside of the restricted area, as that area was established on January 6, 2021.

The exhibit is probative because it is a clear visual illustration of the restricted area, which will be further explained by a United States Capitol Police witness with personal knowledge of the restricted area and security measures in place on January 6, 2021. That witness will testify that the red line superimposed on the photograph is a fair and accurate representation of the restricted area, which was in place around the Capitol on January 6 for, *inter alia*, the protection of the Vice President Pence, who would be visiting. The witness will also explain the use of bike rack

barricades, "area closed" signs, and officers to set and secure the security perimeter. This anticipated testimony satisfies the authentication and admissibility standards.

Furthermore, the exhibit is not unfairly prejudicial, given jurors have day-to-day experience using aerial maps with superimposed lines on them. For example, jurors likely use sites and apps such as Google or Apple maps, which superimpose lines on maps for to provide directions. Therefore, under Federal Rules of Evidence 401, 402 and 403, this Court should find this exhibit admissible, so that it may be authenticated at trial.

B. The Photograph is Admissible as a Demonstrative Exhibit.

Moreover, this exhibit serves as a demonstrative exhibit. "Federal Rule of Evidence 901(a) provides the basis for admissibility of a demonstrative exhibit: 'To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.'" § 8:45. *What are the foundational requirements for a demonstrative exhibit?*, Larsen, Navigating the Federal Trial § 8:45 (2023 ed.) (collecting cases). "[F]oundation will be established under Rule 901(b)(1) by a witness with knowledge testifying the demonstrative exhibit (e.g., photograph, sketch, drawing, chart, map, or diagram) is a 'fair and accurate' depiction or representation of the scene or the article. If there are differences between the demonstrative exhibit and the scene or article it purports to depict, those differences usually go the weight and not the admissibility of the exhibit." *Id.; see also, e.g., U.S. v. Humphrey*, 279 F.3d 372, 376–77 (6th Cir. 2002) (finding, in bank embezzlement case involving coins, trial court did not abuse discretion by admitting as evidence 107 coin bags filled with styrofoam and not coins, even though the court did not expressly weigh probative value against possible prejudice); *U.S. v. Emmons,* 24 F.3d 1210, 1216–17 (10th Cir. 1994) (finding, in prosecution for manufacturing marijuana and related charges, trial judge did not abuse discretion

by admitting into evidence a hand-drawn sketch of the marijuana cultivation operation because the government witness made a sufficient foundation for the admission of the sketch under Fed. R. Evid. 901(a) (i.e., that the matter in question was what its proponent claimed it to be); *U.S. v. Russell*, 971 F.2d 1098, 1104–06 (4th Cir. 1992), *as amended*, (Aug. 12, 1992) (finding, in prosecution for first-degree murder, trial judge did not abuse discretion by admitting a replica gun and ammunition, where neither the victim's body nor the murder weapon was found, because the demonstrative evidence was relevant under Federal Rules of Evidence 401 and 402, and was not so prejudicial as to require exclusion under Federal Rule of Evidence 403).

The only additional alternative to using this demonstrative exhibit would be having a witness present numerous photographs of representative segments of the restricted perimeter, demarcated by bike rack barricades and "area closed" signs. To do so would be a waste of the Court's, the parties', and the jurors' time, and the Court may control the mode and order of the presentation of witnesses to avoid this. Fed. R. Evid. 611(a)(2). Thus, when authenticated by the appropriate Capitol Police witness, this exhibit is proper demonstrative evidence, and its reliability goes to the exhibit's weight, not its admissibility.

C.      The Defendant Cannot Show the Exhibit is Not Fair, Accurate, and Admissible.

Nonetheless, the defendants will likely assert that the aerial photograph outlining the restricted Capitol Grounds is not relevant or is unreliable.  But, the defendants cannot show that the exhibit is unreliable or inaccurate, which is why this argument has been rejected previously in this District, and why courts in other districts have permitted similar aerial photograph demonstrative exhibits. *See, e.g., United States v. Warner,* Case No. 21-cr-00392-RCL, ECF No. 309 (denied in October 11, 2023 Minute Order); *United States v. Thomas*, No. 98-41331, 2000 WL 1028971 at *5 (5th Cir. July 5, 2000) (reviewing various grounds for admission of map derived

from aerial photograph that was digitized to add red radii in order to show the defendant's house was within 1,000 feet of a playground in connection with prosecution for distribution of crack cocaine; rejecting argument that witness who created and authenticated the map had not personally measured anything).  Furthermore, the Defendant may cross-examine witnesses about the exact contours of the restricted area to challenge the reliability of the exhibit.

## CONCLUSION

For the foregoing reasons, the Court should grant the United States' motion to admit the above materials.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:        */s/ Samantha R. Miller*
SAMANTHA R. MILLER
Assistant United States Attorney
New York Bar No. 5342175
United States Attorney's Office
For the District of Columbia
601 D Street, NW 20530
Samantha.Miller@usdoj.gov

TIGHE BEACH
Assistant United States Attorney
Colorado Bar No. 55328
United States Attorney's Office
District of Columbia
202-252-1788
Tighe.Beach@usdoj.gov