UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 23-cr-00139-BAH |
| : | |
| CHRISTOPHER CARNELL and : | |
| DAVID WORTH BOWMAN, : | |
| : | |
| Defendants. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT CHRISTOPHER CARNELL'S
MOTION TO SEVER OR FOR ALTERNATIVE RELIEF**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its opposition to defendant Christopher Carnell's Motion to Sever Trial Or For Alternative Relief. ECF 45. Carnell fails to establish that the inability to call co-defendant David Worth Bowman as a witness in his defense constitutes a prejudicial compromise of a specific trial right, and he provides no other basis to satisfy the heavy burden of showing that continued joinder would violate his constitutional fair trial rights. Bowman's self-serving hearsay statement also is not admissible at a joint trial. Accordingly, Carnell's motion should be denied.

**FACTUAL BACKGROUND**

**I.   Defendants' criminal conduct in and around January 6, 2021.**

On January 6, 2021, Carnell and Bowman traveled together from North Carolina to the former President's "Stop the Steal" rally and together joined the group of individuals who marched to the Capitol, jointly made their way to the restricted Capitol grounds, and together climbed though scaffolding onto the upper west terrace area. From there, Carnell and Bowman, staying together, unlawfully entered the Capitol building, went into the Rotunda, made their way down several hallways, and eventually walked into the Senate chamber and onto the Senate floor. They

1

remained on the Senate floor together for approximately six minutes. While on the Senate floor, Carnell and Bowman examined documents on the Senators' desks, took pictures of documents, and posed for pictures. Soon after they left the chamber, a group of U.S. Capitol Police officers directed them to leave the building. Carnell and Bowman, together, were unlawfully present inside the Capitol building for a total of around 33 minutes.

Christopher Carnell and David Bowman lived in the Raleigh, North Carolina metropolitan area. On December 21, 2020, Carnell sent a text message to three other individuals: co-defendant David Worth Bowman, Aiden Henry Bilyard,[1] and another person (the "group"). Carnell forwarded a message from an individual identified as, "[Name Redacted], Stop the Steal." The message advertised an event planned for January 6, 2021 and stated:

> January 6th is going to be HISTORIC. It's the day We the People will take to the steps of our nation's Capitol and demand they represent us! It's up to us to flood Washington D.C. with Patriots who will loudly tell Congress #DoNotCertify on #Jan6!
>
> Congress has ignored us for far too long, but what they cannot ignore is hundreds of thousands of Patriots rallying outside the halls of Congress. This will send the message that we stand with Rep. Mo Brooks and his colleagues in the House of Representatives.

On January 3, 2021, Carnell texted the group, "January 6 DC trip you guys coming? Me and David are down, we should probably leave earlier this time like 4 am."

During the early morning of January 6, 2021, Carnell traveled from North Carolina to Washington, D.C. with Bowman in order to attend a rally at the Ellipse that featured speeches from individuals including former President Donald Trump. After attending the rally, Carnell and Bowman walked down Pennsylvania Avenue toward the Capitol.

Carnell and Bowman then proceeded to enter the restricted area on Capitol Grounds and

---

[1] Defendant Bilyard was convicted by plea agreement of violating 18 U.S.C. § 111(a)-(b) in *United States v. Bilyard*, Case No. 22-cr-00034-RBW.

2

climbed through scaffolding on the northwest side of the Capitol. The scaffolding had been erected for the inauguration of then President-Elect Joseph R. Biden, Jr.



Carnell and Bowman walked across the Upper West Terrace and Northwest Courtyard toward the Senate Wing Door.  As they walked, at least one group of uniformed officers could be seen protecting the Parliamentarian Door.



The Capitol Building was within the restricted area on January 6, 2021. Carnell and Bowman unlawfully entered the Capitol through the Senate Wing Door at approximately 2:23 p.m. In the below image, Carnell is circled in yellow and Bowman is circled in blue.



Minutes earlier, other rioters had smashed in the windows flanking the Senate Wing Doors, rendering the windows visibly shattered. In addition, the Building's alarm system was audibly blaring as Carnell and Bowman entered the building.

Carnell and Bowman proceeded to the Crypt area of the Capitol. They joined the crowd as it overwhelmed the USCP officers who were attempting to prevent the rioters from entering further into the Capitol.



Carnell and Bowman then traveled into and through the Capitol Rotunda and joined a crowd as it amassed near the Rotunda Door. Carnell chanted with the crowd, "TREASON, TREASON, TREASON," while Bowman stood nearby. Carnell and Bowman then ascended the

4

Rotunda Lobby East Stairs at 2:41 p.m., where they observed other rioters physically attacking a female journalist at the top of the staircase. Again in the images below, Carnell is wearing the red Make America Great Again baseball cap and Bowman is wearing sunglasses.



Carnell and Bowman entered the Senate chamber and walked onto the Senate floor at 2:49 p.m. Based on his statement to the FBI, Bowman understood that Vice President Pence needed to certify something at Congress that day, but believed the certification to be occurring in the House chamber. Around this time, other rioters around Carnell were loudly discussing that the "chair" on the Senate Dais "belongs to the Vice President of United States when he's in here."



While they were on the Senate floor, Carnell and Bowman conversed among themselves and with other rioters, and reviewed materials on Senators' desks as other rioters, including Bowman, took pictures of those items. Bowman photographed a signed document from Senator Mitt Romney to Vice President Pence, which was a copy of Senator Romney's speech from February 2020, when he voted to impeach then-President Trump. Bowman also posed for photographs while on the Senate floor, and stole a paper drink coaster, bearing the seal of the United States Senate, from a desk on the Senate floor.

 

While Bowman walked nearby, Carnell looked over the shoulder and discussed documents with a man in a green combat helmet, who was rummaging through documents on a Senator's desk. The individual with the green combat helmet stated, with regard to documents associated with Senator Ted Cruz, "He was gonna sell us out all along—look! 'Objection to counting the electoral votes of the state of Arizona.'"

6

Carnell then responded, "Wait, no. That's a good thing. He's on our side. He's with us. He's with us."



At or around 2:55 p.m., Carnell and Bowman left the Senate chamber. They were directed to exit the Capitol by uniformed law enforcement officers and left the Capitol through the Senate Carriage Door at 2:56 p.m. At 4:19 p.m., Carnell sent a text message to the group that stated, "We're safe heading home." Bowman responded with a photoshopped image of himself shaking hands with social media figure, Nick Fuentes, in front of what appears to be a video game-created version of the Capitol engulfed in flames.



Then, on January 7, 2021, Bowman sent the group an image of the letter from Senator Romney to Vice President Pence that he photographed while on the Senate floor.



On January 8, 2021, at 2:19 p.m., Bowman texted the group a link to a news story including an image taken from the Senate floor on January 6, 2021. He then wrote "please delete this group text. It would be so funny if you all deleted this as a funny ironic joke." Bilyard responded, "did you get inside? Hypothetically speaking." Another group chat member then sent a computer-

8

generated picture of the U.S. Capitol Building and asked, "did you get inside this cool Minecraft Building?" Bowman replied, "if I was buying textbooks for next semester, I would have hypothetically gotten into the book store and even walk[ed] the checkout floor where all the professors usually buy books and sometimes choose what books their students would read. But no that was just a joke delete the chat because it's funny."

Bilyard then texted the group, "so what you're saying is that you got into a private library of sorts," to which Bowman responded, "In Minecraft school yes[.] But no[.] Delete all of this for fun."

## II. This criminal case.

Carnell and Bowman were charged in the same criminal complaint on February 28, 2023. *See* ECF No. 1. The Grand Jury returned a six count indictment against them on August 26, 2023. *See* ECF No. 22. They each are charged with one felony offense, obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2), and five misdemeanor offenses under 18 U.S.C. § 1752(a) and 40 U.S.C. § 5104(e)(2). *Id.* Neither defendant has requested severance prior to trial, and they do not urge that their cases were improperly joined pursuant to Fed. R. Civ. P. 8(b). Carnell's sole challenge to joinder at trial is that his trial rights will be violated by his inability to elicit testimony regarding a self-serving hearsay statement by Bowman to the FBI, in which Bowman generally stated that he did not know exactly what was occurring at the Capitol on January 6, 2021, other than that "they were going to determine something that would've been very consequential for Trump," and that his intention was "nothing."

## ARGUMENT

Carnell and Bowman have been prosecuted as co-defendants since they were first charged in February 2023. Rule 8(b) permits joinder of defendants "alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."

Fed. R. Crim. P. 8(b). This Circuit construes Rule 8(b) broadly in favor of joinder. *See United States v. Nicely*, 922 F.2d 850, 853 (D.C. Cir. 1991) ("[T]his circuit's law makes it difficult to prevail on a claim that there has been a misjoinder under Rule 8(b)."). Rule 8(b) provides:

> JOINDER OF DEFENDANTS. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or *in the same series of acts* or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. Crim. P. 8(b) (emphasis added). Joinder under Rule 8(b) "is appropriate if there is a 'logical relationship between the acts or transactions' so that a joint trial produces a 'benefit to the courts.'" *United States v. Spriggs*, 102 F.3d 1245, 1255 (D.C. Cir. 1996) (quoting *United States v. Perry*, 731 F.2d 985, 990 (D.C. Cir. 1984)). "Rule 8 not only may shield a party from prejudicial joinder but also serves to protect a variety of other interests served by joint trials including the interests in 'conserv[ing] state funds, diminish[ing] inconvenience to witnesses and public authorities, and avoid[ing] delays in bringing those accused of crime to trial.'" *Brown*, 16 F.3d at 428 (internal citations and quotations omitted).

"There is a preference in the federal system for joint trials." *United States v. Bikundi*, 926 F.3d 761, 780 (D.C. Cir. 2019). Thus, it is "difficult to prevail on a claim that there has been a misjoinder under Rule 8(b)." *Nicely*, 922 F.2d at 853.

Defendants who are properly joined under Rule 8 still "may seek severance under Rule 14, which provides that '[i]f the joinder of offenses or defendants . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.'" *United States v. Wilson*, 605 F.3d 985, 1015 (D.C. Cir. 2010) (quoting Fed. R. Crim. P. 14(a)). Once multiple defendants are properly joined in the same indictment under Rule 8(b), severance under Rule 14 should be granted

10

"sparingly because of the 'strong interests favoring joint trials, particularly the desire to conserve the time of courts, prosecutors, witnesses, and jurors.'" *United States v. Celis*, 608 F.3d 818, 844 (D.C. Cir. 2010) (quoting *United States v. Mardian*, 546 F.2d 973, 979 (D.C. Cir. 1976) (*en banc*)).

Motions for severance of properly joined defendants should be granted only where the dominant public interest in joint trials is outweighed by substantial prejudice arising from case-specific problems. *See United States v. Tucker*, 12 F.4th 804, 824 (D.C. Cir. 2021) (per curiam) ("Joint trials are preferred in federal criminal cases because they 'promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" (quoting *Zafiro v. United States*, 506 U.S. 534, 537 (1993)).

"The preference for joint trials is especially strong when the respective charges require presentation of much the same evidence, testimony of the same witnesses, and involve . . . defendants who are charged, inter alia, with participating in the same illegal acts." *Id*. at *12 (internal quotation marks and citation omitted). Rule 14 "does not require severance even if prejudice is shown," and district courts "should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 538-39.

Indeed, district courts retain "significant flexibility to determine how to remedy a potential risk of prejudice, including ordering lesser forms of relief such as limiting jury instructions." *Bikundi*, 926 F.3d at 780 (citing *United States v. Moore*, 651 F.3d 30, 95 (D.C. Cir. 2011)); *see United States v. Butler*, 822 F.2d 1191, 1194 (D.C. Cir. 1987) (acknowledging trial judges are given great latitude to balance interests, including to preserve judicial and prosecutorial resources, and denying defendant's motion to sever). "[T]he discretion afforded to district courts

must be exercised with appreciation of the policy reasons favoring joinder." *United States v. Bikundi*, 14-cr-30 (BAH), 2016 WL 912169, at *42 (D.D.C. Mar. 7, 2016). "[S]everance is the exception rather than the rule," and "motions to sever should be granted 'sparingly.'" *Tucker*, 2021 WL 3950864, at *12 (quoting *United States v. Celis*, 608 F.3d at 844 (per curiam)).

In fact, the D.C. Circuit has instructed that for severance to be proper "[t]here must be a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Bostick*, 791 F.3d 127, 152-53 (D.C. Cir. 2015) (citation and punctuation omitted); *see also United States v. Glover*, 681 F.3d 411, 417 (D.C. Cir. 2012) (affirming district court's denial of defense motion to sever trial citing same standard). Accordingly, severance is not required simply because a defendant might have a better chance of acquittal if tried separately. *See United States v. Halliman*, 923 F.2d 873, 884 (D.C. Cir. 1991). Salient factors the Court should consider, and which militate against severance, include whether separate trials would involve (1) the presentation of the same evidence; (2) testimony from the same witnesses; and (3) the same illegal conduct. *See United States v. Manner*, 887 F.2d 317 (D.C. Cir. 1989).

### I. Joinder is appropriate and severance is unnecessary because the defendants participated in the same "series of acts" and the evidence against them is largely the same.

As Carnell and Bowman appear to concede by their silence, the defendants were properly joined under Rule 8 and satisfy the *Manner* factors because the defendants not only all participated in the attack on the U.S. Capitol, but they also participated in the same "series of acts" on January 6, 2021. This Court previously has found that two similar defendants who breached the Senate floor on January 6, 2021 were properly joined under Rule 8.

As explained by this Court in granting the United States' motion to join defendants Luke Wessley Bender and Landon Mitchell over Bender's objection in *United States v. Bender*,

> The government's allegations … at a minimum, arise from "the same series of acts," given that the two defendants knew each other, came to the former President's rally together, allegedly "climbed scaffolding and unlawfully entered" the Capitol together, navigated the building together, entered the Senate Chamber together, and stood on the Senate Dais together. Gov't's Mot. at 23. Due to the closely contiguous conduct engaged in by these two defendants, the evidence presented against each will be overlapping and therefore joinder of these defendants for trial will promote the interest of efficiency, *see Manner,* 887 F.2d at 324, and avoid the "unnecessary waste of judicial, prosecutorial and civic effort, resources, and time" that occurs where separate juries would be presented with the same evidence in separate trials. *United States v. Wilkins*, 538 F. Supp. 3d 49, 88 (D.D.C. 2021) (quoting *United States v. Treadwell*, 566 F. Supp. 80, 86-87 (D.D.C. 1983)). These facts not only closely link the two defendants' alleged conduct but also differentiate their conduct from that of hundreds of other defendants with different combinations of activities, locations, and timing. Under the circumstances it is apparent that the indictments are, as the government represents, separate only as an accident of the timing of the relevant investigation and arrests.

Case No. 21-cr-508 (BAH) (Minute Entry, 05/24/2022). The same is true here.

The defendants' actions on January 6, 2021, like those of Bender and Mitchell, amounted to their "participat[ion] in the … same series of actions …, constituting an offense or offenses." Rule 8(b). The overlap in the charged conduct triggers "the presumption and common practice [that] favor trying together defendants who are charged with crimes arising out of a common core of facts." *United States v. De La Paz-Rentas*, 613 F.3d 18, 23 (1st Cir. 2010).

### II. Carnell fails to meet his "heavy burden" under Rule 14 to demonstrate prejudice sufficient to overcome the preference for joinder.

Carnell fails to carry his "heavy burden" to demonstrate that a joint trial creates a serious, insurmountable risk to his specific trial rights or to the jury's ability to make a fair decision. His sole argument for severance appears to be that he wishes to use a self-serving, out of court statement by his co-defendant as "exculpatory testimony to show that there was no advance plan for the young men to walk into the Capitol Building and that they did not intend to interfere with the proceedings of Congress. Moreover, his testimony will show that the men did not intend to act corruptly." ECF No. 45 at 6. However, he fails to acknowledge—much less establish—the *prima*

13

*facie* showing required under *United States v. Ford*, 870 F.2d 729, 731 (D.C. Cir. 1989) to justify severance based on the need for a co-defendant's testimony.

To establish a *prima facie* case for severance under *Ford*, a movant must demonstrate: (1) a bona fide need for the testimony; (2) the substance of the testimony; (3) the exculpatory nature and effect of the testimony; and (4) the likelihood that the co-defendant will testify if the cases are severed. *Id.* Most importantly, Carnell here fails to establish "with requisite specificity the exculpatory 'nature and effect' of his co-defendant's testimony." *Id.* at 732 (citing cases). That is, he cannot show that Bowman's self-serving statement about Bowman's knowledge and intent would be "substantially exculpatory" of any of the crimes charged against Carnell. *Id.* That is because the testimony that Carnell seeks to elicit from Bowman is simply an untrustworthy statement that *Bowman* did not plan to enter the Capitol, interfere with Congress, or act corruptly. *See* ECF No. 45 at 6. This statement cannot be considered "substantially exculpatory" as to Carnell. Even assuming that Bowman would testify[2] and his actual recorded statement stands for this proposition—neither of which Carnell proved in his motion—"severance is not warranted when the proposed testimony … would be suspect, self-serving, and of potentially insignificant probative value." *United States v. Edelin*, 118 F.Supp.2d 36, 44 (D.D.C. 2000) (Lamberth, J.).

Here, Bowman's minimization or denial of his own conduct would not and could not exculpate Carnell, even if such statement was trustworthy. *See, e.g., Williamson v. United States*, 512 U.S. 594, 602 (1994) (discussing hearsay exception for declarations against interest but considering self-serving statements as untrustworthy). Because he does not establish a *prima facie*

---

[2] The Court also would be justified in denying Carnell's motion because Bowman "has submitted no affidavit and made no formal offer to testify in a severed trial … especially where that trial could occur before his own and/or before his appeals have been exhausted." *United States v. Turner*, 2006 WL 1980252, at *5 (D.D.C. July 12, 2006) (Kollar-Kotelly, J.)

case for severance under *Ford*, Carnell's motion to sever should be denied.

### III.  Carnell should not be permitted to elicit Bowman's hearsay statements.

Carnell alternatively seeks to admit Bowman's out-of-court statement in their joint trial. However, Bowman's statement should be excluded as hearsay and as a corroborating exculpatory statement that is self-serving. Bowman's out of court statement plainly would be introduced as evidence to prove the truth of the matter asserted and it does not satisfy any of the recognized exceptions to the hearsay rule.

It is well-settled that a prior, non-inculpatory statement to law enforcement is properly excluded as hearsay and as a corroborating statement that is self-serving. *United States v. Smith*, 490 F.2d 789, 791-92 (D.C. Cir. 1974). Even if Bowman were to testify in his own defense, his prior consistent statement, reciting facts substantially the same as his testimony, would be inadmissible. *Id.* at 791. That is because "testimony under oath is better evidence than … confirmatory declarations not under oath, and the repetition of his assertions does not carry his credibility further, if so far, as his oath." *Id.* at 792 (quoting *Ellicott v. Pearl*, 35 U.S. 412, 439 (1836)).

Of course, the rule against hearsay contains limited exceptions based upon trustworthiness. For example, self-*inculpatory* statements are admitted as an exception to hearsay due to "the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." *Williamson*, 512 U.S. at 599. But this exception does not extend to self-*exculpatory* statements. "Self-exculpatory statements are exactly the ones which people are most likely to make even when they are false[.]" *Id.* at 600. Accordingly, "the most faithful reading of Rule 804(b)(3) is that it does not allow admission of non-self inculpatory statements, even if they are made within a broader

15

narrative that is generally self-inculpatory." *Id.* at 600-01.

Carnell incorrectly suggests that Bowman's out-of-court statement is admissible to establish both co-defendants' states of mind and intent. Again, Carnell wishes to introduce Bowman's purported statement that there was no advance plan for the defendants to walk into the Capitol Building, that they did not intend to interfere with the proceedings of Congress, and that the men did not intend to act corruptly. ECF 45 at 6. But the statement plainly does not satisfy Rule 803(3)'s exception because it does not represent "*the declarant's then-existing* state of mind (such as motive, intent, or plan)[.]" Fed. R. Evid. 803(3) (emphasis added).[3] Carnell is neither the declarant nor does the statement represent either defendant's state of mind during their alleged wrongdoing. The rationale of the hearsay exception in Rule 803(3) is that a contemporaneous statement is sufficiently trustworthy where "the declarant presumably has no chance for reflection, and therefore for misrepresentation." *United States v. Miller*, 874 F.2d 1255, 1264 (9th Cir. 1989); *see also, e.g., United States v. Day,* 591 F.2d 861, 887 (D.C. Cir. 1978), *abrogated on other grounds by Dowling v. United States*, 493 U.S. 342, 350 (1990) ("Rule 803(3) excepts from the hearsay rule statements of a present physical condition. For the exception to apply, there must be a spontaneous statement describing a contemporaneous physical condition.") To be clear, Bowman's statement was not made at the time of his alleged crimes on January 6, 2021, so it does

---

[3] Notwithstanding Carnell's argument, Judge Friedman did not broadly rule, as Carnell claims, "that the use of a defendant's out-of-court statements is permissible when introduced by a defendant to prove his state of mind or intent." ECF 45 at 7. Instead, Judge Friedman denied the government's pretrial motion *in limine* to exclude Christopher Warnagiris's out-of-court statements because, "his out-of-court statements only constitute hearsay when they are being admitted to prove the truth of the matter asserted in those statements." *United States v. Warnagiris*, 2023 WL 6973213, at *5 (D.D.C. Oct. 23, 2023) (citing FED. R. EVID. 801(c)). "His statements may properly be admitted for a non-hearsay purpose; for example, as evidence of Mr. Warnagiris's state of mind or intent . . . The parties may raise specific hearsay objections as appropriate at trial." *Id.*

16

not have the trustworthiness of a statement of his state of mind during his alleged crimes. And it certainly cannot be introduced under Rule 803(3) to show *Carnell's* state of mind.

Bowman's statement also is not admissible as impeachment, as Carnell contends. *See* ECF 45 at 7-8. Carnell does not explain how his co-defendant's self-serving statement could properly be used to impeach the testimony of any government witness. That is because, in contrast to substantive evidence, "impeachment evidence is 'offered to discredit a witness to reduce the effectiveness of her testimony by bringing forth evidence which explains why the jury should not put faith in her … testimony.'" *Standley v. Edmonds-Leach*, 783 F.3d 1276, 1282 (D.C. Cir. 2015) (quoting *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir. 1993)). Here, the government's "evidence of the teenager's conduct and statements inside of the capitol," *id.* at 8, cannot be impeached by that same teenager's out-of-court statement to an officer. Testimony and evidence regarding Carnell's conduct—breaching the Capitol building on January 6, 2021, invading the Senate chamber, and working with other individuals to search for evidence of wrongdoing in connection with the certification of the Electoral College vote—is not contradicted by Bowman's out of court statements that Bowman didn't "exactly" know what was happening in the Capitol or that Bowman's "intention from the get-go" was "nothing." *Id*. at 2-3. Bowman's self-serving statement simply has no bearing on the credibility of any government witness.

Despite Carnell's argument, *see* ECF 45 at 7, Bowman's statement also is not admissible when elicited by Carnell as a statement of a co-conspirator under Fed. R. Evid. 801(d)(2)(E). That exception to hearsay applies to "a statement [that is offered] against an *opposing party* and was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E) (emphasis added); *see also United States v. Safavian*, 435 F. Supp.2d 36, 46-47 (D.D.C. 2006) (Friedman, J.) (considering *government* offering statements of a co-conspirator

17

under Rule 801(d)(2)(E)). Because Carnell is not an opposing party of Bowman, and because the proffered statement was not made in furtherance of their conspiracy, he cannot elicit Bowman's hearsay statement under Rule 801(d)(2)(E).

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that defendant Carnell's motion to sever be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    /s/ Samantha R. Miller
SAMANTHA R. MILLER
Assistant United States Attorney
New York Bar No. 5342175
United States Attorney's Office
For the District of Columbia
601 D Street, NW 20530
Samantha.Miller@usdoj.gov

TIGHE BEACH
Assistant United States Attorney
Colorado Bar No. 55328
United States Attorney's Office
District of Columbia
202-252-1788
Tighe.Beach@usdoj.gov

JORDAN A. KONIG
Supervisory Trial Attorney, Tax Division,
U.S. Department of Justice
Detailed to the U.S. Attorney's Office
For the District of Columbia
P.O. Box 55, Washington, D.C.  20044
202-305-7917 (v) / 202-514-5238 (f)
Jordan.A.Konig@usdoj.gov