UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Case No.: 23-CR-139 (1) (BAH) |
| CHRISTOPHER CARNELL, : | |
| : | |
| Defendant. : | |

**STATEMENT OF FACTS AND ELEMENTS FOR STIPULATED TRIAL**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Christopher Carnell, with the concurrence of his attorney, hereby submit the Elements and Statement of Facts for Stipulated Trial in this action.

**I.    Elements of the Offenses.**

   *A. Count One: Obstruction of an Official Proceeding.*

The essential elements of the offense of obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2), each of which the government must prove the following beyond a reasonable doubt, are as follows:

1. The defendant attempted to or did obstruct or impede an official proceeding;

2. The defendant intended to obstruct or impede the official proceeding;

3. The defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding; and

4. The defendant acted corruptly.

### B. Count Two: Entering and Remaining in a Restricted Building or Grounds.

The essential elements of the offense of entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1), each of which the government must prove beyond a reasonable doubt, are as follows:

1. The defendant entered or remained in a restricted building or grounds without lawful authority to do so; and,
2. That the defendant did so knowingly.

### C. Count Three: Disorderly and Disruptive Conduct in a Restricted Building or Grounds.

The essential elements of the disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2), each of which the government must prove beyond a reasonable doubt, are as follows:

1. That the defendant engaged in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds;
2. That such conduct occurred when, or so that, such conduct, in fact, impeded or disrupted the orderly conduct of Government business or official functions; and
3. That the defendant did so knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions.

### D. Count Four: Entering and Remaining on the Floor of Congress.

The essential elements of the offense of entering and remaining on the floor of Congress, in violation of 40 U.S.C. § 5104(e)(2)(A), each of which the government must prove beyond a reasonable doubt, are as follows:

1. That the defendant entered or remained on the floor of either House of Congress without authorization; and
2. The defendant acted willfully and knowingly.

### E. Count Five: Disorderly Conduct in a Capitol Building or Grounds.

The essential elements of the offense of entering and remaining on the floor of Congress, in violation of 40 U.S.C. § 5104(e)(2)(D), each of which the government must prove beyond a reasonable doubt, are as follows:

1. The defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings;
2. The defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress; and
3. The defendant acted willfully and knowingly.

### F. Count Six: Parading, Demonstrating, or Picketing in a Capitol Building.

The essential elements of the offense of parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G), each of which the government must prove beyond a reasonable doubt, are as follows:

1. The defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings; and
2. The defendant acted willfully and knowingly.

## II. Statement of Stipulated Facts.

### A. The Attack at the U.S. Capitol on January 6, 2021.

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police ("USCP"). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session is set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18 and requires a deliberate and legally prescribed assessment of ballots, lists, certificates, and, potentially, written objections. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP

attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.7 million dollars for repairs.

7.     Shortly thereafter, at approximately 2:20 p.m., members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. on January 6, 2021. In light of the dangerous circumstances caused by rioters entry into the Capitol with no lawful authority—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

   **B. Defendant Christopher Carnell's Participation in the January 6, 2021, Capitol Riot.**

8.     The defendant, Christopher Carnell, lived in Cary, North Carolina.

9.     On December 21, 2020, Carnell sent a text message to three other individuals: co-defendant David Worth Bowman, Aiden Henry Bilyard,[1] and another person (the "group").

---

[1] Defendant Bilyard was convicted by plea agreement of violating 18 U.S.C. § 111(a)-(b) in *United States v. Bilyard*, Case No. 22-cr-00034-RBW.

Carnell forwarded a message from an individual identified as, "[Name Redacted], Stop the Steal."

The message advertised an event planned for January 6, 2021 and stated:

> January 6th is going to be HISTORIC. It's the day We the People will take to the steps of our nation's Capitol and demand they represent us! It's up to us to flood Washington D.C. with Patriots who will loudly tell Congress #DoNotCertify on #Jan6!
>
> Congress has ignored us for far too long, but what they cannot ignore is hundreds of thousands of Patriots rallying outside the halls of Congress. This will send the message that we stand with Rep. Mo Brooks and his colleagues in the House of Representatives.

10. On January 3, 2021, Carnell texted the group, "January 6 DC trip you guys coming? Me and David are down, we should probably leave earlier this time like 4 am."

11. During the early morning of January 6, 2021, Carnell traveled from North Carolina to Washington, D.C. with Bowman in order to attend a rally at the Ellipse that featured speeches from individuals including former President Donald Trump.



12. After attending the rally, Carnell and Bowman walked down Pennsylvania Avenue toward the Capitol; in the below image, Carnell is circled in yellow and Bowman is circled in blue.



13. Carnell and Bowman then proceeded to enter the restricted area on Capitol Grounds and climbed through scaffolding on the northwest side of the Capitol. The scaffolding had been erected for the upcoming inauguration of President Joseph R. Biden, Jr.



14.     Bowman and Carnell, circled in red, walked across the Northwest Courtyard toward the Senate Wing Door.  As they walked, a group of uniformed officers were visibly protecting another entry point into the Capitol Building, the Parliamentarian Door.  Those officers are circled in green below.



15.     The Capitol Building was within the restricted area on January 6, 2021. Carnell and Bowman entered the Capitol with no lawful authority through the Senate Wing Door at approximately 2:23 p.m.  In the below image, Carnell is circled in yellow and Bowman is circled in blue.

*Remainder of Page Intentionally Left Blank*

\*     \*     \*



Minutes earlier, other rioters had smashed in the windows flanking the Senate Wing Doors, rendering the windows visibly shattered. In addition, the Building's alarm system was audibly blaring as Carnell and Bowman entered the Building.

16. Carnell and Bowman proceeded to the Crypt area of the Capitol. They joined the crowd as it overwhelmed the USCP officers who were attempting to prevent the rioters from entering further into the Capitol.



17.     Carnell and Bowman then traveled into and through the Capitol Rotunda and joined a crowd as it amassed near the Rotunda Door. Carnell chanted with the crowd, "TREASON, TREASON, TREASON," while Bowman stood nearby.





18.     Carnell and Bowman then ascended the Rotunda Lobby East Stairs at 2:41 p.m. They observed other rioters physically attacking a female journalist at the top of the staircase. Again in the images below, Carnell is wearing the red Make America Great Again baseball cap and Bowman is wearing sunglasses.



19. Carnell and Bowman entered the Senate chamber and walked onto the Senate floor at 2:49 p.m. While entering the Senate Floor, other rioters were loudly discussing that the "chair" on the Senate Dais "belongs to the Vice President of United States when he's in here," to which one rioter responded, "they can steal our election but we can't sit in their chairs?!"





20.     Carnell then looked over the shoulder and discussed documents with a man in a green combat helmet, who was rummaging through documents on a Senator's desk. Specifically, the individual with the green combat helmet stated, with regard to documents associated with Senator Ted Cruz, "He was gonna sell us out all along—look! 'Objection to counting the electoral votes of the state of Arizona.'" Carnell then responded, "Wait, no. That's a good thing. He's on our side. He's with us. He's with us."



21.     At or around 2:55 p.m., Carnell and Bowman left the Senate chamber. They were directed to exit the Capitol by uniformed law enforcement officers and left the Capitol through the Senate Carriage Door at 2:56 p.m.

22.     At 4:19 p.m., Carnell sent a text message to the group that stated, "We're safe heading home."

**III.    The Offenses.**

23. With respect to Count One, which charges Carnell with Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2), Carnell reserves the right to appeal this charge if the Court finds sufficient facts to convict him under the current interpretation of the statute as set forth in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023), *cert. granted*, 2003 WL 8605748 at *1 (U.S. Dec. 13, 2023) (No. 23-5572), and *United States v. Robertson*, No. 22-3062 (D.C. Cir. Oct. 20, 2023), prior to any decision by the Supreme Court in *Fischer*. Carnell agrees that, without waiving any arguments set forth in Carnell's Motion to Dismiss Count One (ECF No. 34) and Motion *in Limine* for Count One (ECF No. 43), the Court may find that the government has met its burden of establishing all of the elements of 18 U.S.C. § 1512(c)(2) and may find the defendant guilty on Count One. Carnell admits that his conduct falls within the current interpretation of the statute under *Fischer*. However, none of the foregoing should be construed in any way as a waiver by Carnell of his right to appeal a conviction under 18 U.S.C. § 1512(c)(2) in the event that the Supreme Court reverses the D.C. Circuit's opinion in *Fischer* or any other case consolidated with *Fischer* on appeal.

24. Without waiving any arguments set forth in Carnell's Motion *in Limine* for Counts Two and Three (ECF No. 42) and in Bowman's Motion to Dismiss Counts 2 & 3 (ECF No. 53, which Carnell joined in ECF No. 56), the parties stipulate and agree that if the Court finds the existence of the above facts beyond a reasonable doubt, this evidence would establish each and every element of the remaining counts of the indictment, Counts Two, Three, Four, Five, and Six.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

By: */s/ Samantha R. Miller*

SAMANTHA R. MILLER
Assistant United States Attorney
New York Bar No. 5342175
United States Attorney's Office
For the District of Columbia
601 D Street, NW 20001
Samantha.Miller@usdoj.gov

*/s/ Jordan A. Konig*
JORDAN A. KONIG
Supervisory Trial Attorney, Tax Division,
U.S. Department of Justice
Detailed to the U.S. Attorney's Office
For the District of Columbia
P.O. Box 55, Washington, D.C.  20044
Jordan.A.Konig@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

  I, CHRISTOPHER CARNELL, have read this Statement of Facts for Stipulated Trial and have discussed it with my attorney. I fully understand the elements and the facts that are set forth. I agree and acknowledge by my signature that this Statement of Facts for Stipulated Trial is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of Facts for Stipulated Trial fully.

Date: _____     _____
                CHRISTOPHER CARNELL
                Defendant

## ATTORNEY'S ACKNOWLEDGMENT

  I have read this Statement of Facts for Stipulated Trial and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of Facts for Stipulated Trial as true and accurate.

Date: _____     _____
                MARINA MEDVIN
                Attorney for Defendant CARNELL