# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 23-cr-00139-BAH** |
| | : | |
| **CHRISTOPHER CARNELL and** | : | |
| **DAVID WORTH BOWMAN,** | : | |
| | : | |
| **Defendants.** | : | |

## UNITED STATES' SUPPLEMENTAL MEMORANDUM
### REGARDING RECENT DECISION IN *UNITED STATES V. GROSECLOSE*

As noted in the government's Response (ECF 80) to Carnell's Notice of Authority (ECF 78) regarding Judge Cooper's January 5, 2024 ruling in *United States v. Groseclose*, No. 21-CR-311 (CRC), 2024 WL 68248, at *2 (D.D.C. Jan. 5, 2024) (slip copy), the government hereby submits its supplemental memorandum addressing that decision. As explained below, that decision is helpful to the Court's inquiry regarding 18 U.S.C. § 1752 in several respects, even though it ultimately reached the wrong conclusion. *Groseclose* is correct, first, that, if Section 1752's federal-nexus requirement (*i.e.*, that "the President or other person protected by the Secret Service is or will be temporarily visiting," 18 U.S.C. § 1752(c)(1)(B)) is "jurisdictional," then the statute's "knowing" *scienter* does not extend to that nexus element. *Groseclose* is also correct that the question whether the federal-nexus element is jurisdictional should be answered through the lens applied by the Supreme Court in *United States v. Feola*, 420 U.S. 671 (1975) and *Rehaif v. United States*, 139 S. Ct. 2191 (2019), and the D.C. Circuit in *United States v. Burwell*, 690 F.3d 500 (D.C. Cir. 2012) (en banc); that is, "'the need to avoid imposing substantial penalties – including jail sentences – on innocent citizens who *had no idea* they were committing a crime.'" *Groseclose*, 2024 WL 68248, at *4 (emphasis in original) (quoting *Burwell*, 690 F.3d at 506-07). And *Groseclose* is correct that a court considering Section 1752 "as it stood when first enacted as part

of the Omnibus Crime Control Act of 1970, Pub. L. No. 91-644, 84 Stat. 1880, 1891-1892 (1971), … would be hard-pressed to see meaningful daylight between *Feola*"—which did *not* extend a *mens rea* requirement to the federal-nexus requirement presented in that case—and the present case. *Groseclose*, at 16. But *Groseclose* took a wrong a turn when it then discerned a dispositive "reconceptualiz[ation]" of Section 1752 in Congress's 2006 amendments to that statute. As explained below, the modest amendments made by the USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, 120 Stat. 192 (2006), do not support the unlikely inference that Congress intended to transform a previously "jurisdictional" requirement into something else—thereby minting a new *mens rea* requirement and jeopardizing the enforcement of existing provisions—without ever saying so. Simply put, those amendments do not bear the weight that *Groseclose* places on them.

I.    ***GROSECLOSE* CORRECTLY IDENTIFIES A CRITICAL ASPECT OF THE QUESTION PRESENTED**

Judge Cooper's decision in *Groseclose* helpfully focuses the analysis on a critical ground to resolve the question presented: whether the requirement that "the President or other person protected by the Secret Service [wa]s or w[ould] be temporarily visiting" the restricted building or grounds (hereinafter, the "federal-protectee requirement") is "jurisdictional" for purposes of *mens rea*. *See Groseclose*, 2024 WL 68248, at *6-*9; *see also, e.g., Rehaif*, 139 S. Ct. at 2196 ("Because jurisdictional elements normally have nothing to do with the wrongfulness of the defendant's conduct, such elements are not subject to the presumption in favor of *scienter*.")

At the outset, the *Groseclose* court correctly observed that the judges in this district have reached conflicting conclusions on the question whether Section 1752(a)'s "knowingly" requirement applies to the second component of the federal-protectee requirement, which is set forth in § 1752(c)(1)(B). On one hand, at least five judges have indicated that the statute does not

require proof of knowledge of the federal-protectee requirement. *See United States v. Griffin*, No. 21-cr-92 (TNM), ECF No. 106, at 330-332; *United States v. Samsel*, No. 21-cr-537 (JMC), ECF No. 313 (provisionally accepting the government's position); *United States v. Eicher*, No. 22-cr-38 (BAH), Trial Tr. at 7-8 (June 14, 2023); *United States v. Vo*, No. 21-cr-509 (TSC), Trial Tr. at 1199-1200 (Sept. 22, 2023); *United States v. Rhine*, No. 21-cr-687, ECF No. 104 (Apr. 24, 2023) ("Nowhere does the statute even suggest that the defendant must know the details of the visit. Indeed, a contrary reading would defeat the protective purpose of the statute, as some degree of secrecy is often integral to Secret Service protection."). On the other hand, three other judges (including Judge Cooper in *Groseclose*) have held that "knowingly" applies to the federal-protectee requirement. *United States v. Hostetter*, No. 21-cr-392 (RCL), 2023 WL 4539842 (D.D.C. July 13, 2023); *United States, v. Elizalde*, No. 23-cr-170 (CJN), 2023 WL 8354932 (D.D.C. Dec. 1, 2023); *United States v. Groseclose*, No. 21-cr-311 (CRC), ECF No. 99 (D.D.C. Jan. 5, 2024).

While *Groseclose* ultimately reached the wrong conclusion (as explained below), *Groseclose* analyzed the question under the appropriate framework, which is reflected by the Supreme Court's decisions in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), and *United States v. Feola*, 420 U.S. 671 (1975), and by the en banc D.C. Circuit in *United States v. Burwell*, 690 F.3d 500 (D.C. Cir. 2012).

First, as reflected in *Groseclose*, *Rehaif* illustrates the proper inquiry. In *Rehaif*, the Court considered the *mens rea* required under 18 U.S.C. § 924(a)(2) (2019)'s penalty for anyone who "knowingly violates" subsection 922(g). Subsection 922(g), in turn, makes it unlawful for prohibited classes of individuals to (among other acts) "possess" a firearm "in or affecting" interstate commerce. *Rehaif* held that a violation of Sections 922(g) and 924(a)(2) required proof

that the "defendant knew both that he engaged in the relevant conduct (that he possessed a firearm) and also that he fell within the relevant status (that he was a felon, an alien unlawfully in this country, or the like)." 139 S. Ct. at 2194. But, importantly, *Rehaif* also made clear that the statute's knowledge requirement does *not* extend to the jurisdictional interstate-commerce elements of § 922(g), reasoning (and reaffirming) that jurisdictional elements "normally have nothing to do with the wrongfulness of the defendant's conduct" and, thus, "are not subject to the presumption in favor of *scienter*." 139 S. Ct. at 2196.

Section 1752 has a similar structure to the statute in *Rehaif* and likewise warrants a similar analysis. Section 1752(a)(1), similarly to Section 924(a)(2) in *Rehaif*, criminalizes certain "knowing" conduct (*i.e.*, the entering or remaining without lawful authority in a restricted building or grounds). And Section 1752(c)(1), similarly to Section 922(g) in *Rehaif*, sets the contours of the offense by (i) defining the substance of the prohibited conduct (*i.e.*, that the trespassed building or grounds must be "posted, cordoned off, or otherwise restricted"); and (ii) limiting the offense to instances implicating a federal nexus ("of a building or grounds where the President or other person protected by the Secret Service or will be temporarily visiting," 18 U.S.C. § 1752(c)(1)(B)).

There is no dispute that the "knowingly" requirement in Section 1752 applies to each of the phrases in the statute's operative provision (here, 18 U.S.C. § 1752(a)(1) and (2)), including the statute's location requirement (*i.e.*, "restricted building or grounds"). Nor is there dispute that Section 1752(c)(1)(B) separately defines that phrase to include, as relevant here, "any posted, cordoned off, or otherwise restricted area … of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." But that the statute requires proof that an individual knows that the building or grounds *is* restricted does not compel that he or she must know *why* it's restricted.

4

Given the similarity in the statutes' respective structures, *Rehaif* supports two conclusions with respect to 18 U.S.C. § 1752. First, as everyone agrees, Section 1752(a)(1) requires proof of the defendant's knowledge that the area is "posted, cordoned off, or otherwise restricted area." Second, the "knowingly" requirement extends to the additional federal-protectee requirement in Section 1752(c)(1)(B) if, and only if, that requirement is not "jurisdictional" in the *Rehaif* sense. "That is because the presumption of favor of *mens rea* developed 'for one particular reason: to avoid criminalizing otherwise lawful conduct.'" *Groseclose*, 2024 WL 68248, at *4 (quoting *Burwell*, 690 F.3d at 505). Groseclose was correct, therefore, in identifying a key (and potentially dispositive) question in this case: is the federal-protectee element a jurisdictional one for *mens rea* purposes, or is it a substantive (separating innocent from culpable conduct)?

*Second*, *Groseclose* was also correct at the second step: Supreme Court and D.C. Circuit precedent provides the framework for answering that question. In *Feola*, the Court considered whether assault upon a federal officer while engaged in the performance of his official duties, in violation of 18 U.S.C. § 111, requires proof of the defendant's "knowledge that the intended victim is a federal officer." 420 U.S. at 672-673. In deciding whether to extend the *mens rea* requirement to the federal-victim element, *Feola* looked to whether the element was jurisdictional—*i.e.*, whether the relevant fact "need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute." 420 U.S. at 676 n.9.

Applying this inquiry to Section 111, the Court determined that the government was not required to prove the defendant's knowledge that the victim of his assault is a federal officer. The Court's reasoning turned on Section 111's purpose. *Feola* posited that, *if* Congress intended Section 111 "to fill a gap in the substantive law of the States"—*i.e.*, to more severely punish assaults committed against federal officers—then Section 111 should be treated "as a federal

aggravated assault statute" and read as requiring the added *mens rea* that typically attaches to aggravating elements. 420 U.S. at 683. But *Feola* declined to find such a congressional intent in Section 111. Rather, relying largely on a letter submitted by the Attorney General in support of enacting Section 111's precursor, the Court determined that Congress' primary intent in enacting Section 111 was limited: to simply provide a federal forum for the prosecution of those who assault federal officials, in part out of concern with uneven enforcement by state authorities under existing state assault statutes. *Id.* at 684 ("In the congressional mind, with the reliance upon the Attorney General's letter, certainty required that these cases be tried in the federal courts, for no matter how 'respectable and well disposed,' it would not be unreasonable to suppose that state officials would not always or necessarily share congressional feelings of urgency as to the necessity of prompt and vigorous prosecutions of those who violate the safety of the federal officer."). Because the federal-victim element's function was jurisdictional (as opposed to being a substantive aggravating element), no *mens rea* attached to it.

Just as important in understanding *Feola* is what the Court did *not* find dispositive in that case—*i.e.*, which arguably substantive features did not carry the day. One such feature was inferences about congressional intent based on nuance in the statute's penalty structure. At the time *Feola* was decided, an unarmed assault of a federal officer in violation of Section 111 was "punishable by a sentence of three years' imprisonment and a $5,000 fine"— "a harsher penalty than [was] typically imposed for an unarmed assault on a private citizen." 420 U.S. at 702 (Stewart, J., dissenting). And those penalties were also distinct—and different—from the penalties for garden-variety federal assault within the admiralty, maritime, or territorial jurisdictional of the United States. *Id.* at 703 (Douglas, J. dissenting). Indeed, the dissenters in *Feola* would have extended the statute's *mens rea* requirement to the federal-victim requirement largely on that

ground. *Id.* at 702-703. But the Court did not. The Court concluded that, Section 111's unique (and harsher) penalties notwithstanding, the statute's federal-victim requirement was jurisdictional, not an aggravating element, for *mens rea* purposes.

In *Burwell*, too, the D.C. Circuit found that the change in penalty structures based on the type of weapon utilized did not silently reflect congressional intent to require additional proof of *scienter*. The D.C. Circuit explained,

> To be sure, a statute might aim to deter each individual offender from committing a particular crime (or in this case, choosing a particular weapon to commit a crime), which implicitly requires that the offender make a conscious choice to engage (or not) in a particular course of conduct. But a statute might also attempt to deter offenders more generally through the imposition of a particularly severe penalty for a certain offense. In the case of § 924(c)(1)(B)(ii), for example, Congress likely attached such a steep penalty to the use of a machinegun in an attempt to deter all offenders from using such weapons. This broader understanding of "deterrence" does not require that each individual offender convicted under the statute have *mens rea* with respect to the machinegun, because the deterrent value of the statute arises out of its capacity to deter future offenders.

*Burwell*, 690 F.3d at 508.

## II.   *GROSECLOSE* CORRECLTY ANALYZES THE "JURISDICTIONAL" STATUS OF SECTION 1752(a)'S PRE-2006 FEDERAL-PROTECTEE REQUIREMENT

*Groselose* next concluded that a court considering Section 1752 "as it stood when first enacted as part of the Omnibus Crime Control Act of 1970, Pub. L. No. 91-644, 84 Stat. 1880, 1891-1892 (1971), … would be hard-pressed to see meaningful daylight between *Feola* and the present case." This, too, is right.

As *Groseclose* explained, Section 1752's legislative history makes clear that Congress was "motivated by a desire to federalize ordinary state-law offenses in order to achieve more certainty and uniformity over security measures involving important federal officers." *Groseclose*, at 16. It continued:

> The Senate Report [accompanying Section 1752's enactment in 1971] explained that the new law was "designed to provide a uniform minimum

7

of Federal jurisdiction for Presidential security when the President is on temporary visits." S. Rep. 91-1252, at 6 (1970). Before the enactment of § 1752, the report noted, the "Secret Service [had to] rely upon the assistance of local authorities to arrest persons who may be guilty of such disruptive conduct. In a quieter era, this system worked relatively well. [By 1970], however, it ha[d] become increasingly difficult to maintain the necessary level of security in this method." *Id.* at 7. For example, it was often "difficult to tell exactly which jurisdiction [bore] the responsibility for detention and prosecution. Moreover, each jurisdiction utilize[d] different criminal statutes, with different elements of crime, which ma[de] Secret Service agents unsure of the legal extent of their authority and ma[de] uniform enforcement impossible. *Id.*

*Groseclose*, at 16-17 (quoting S. Rep. 91-1252 (1970).

Other passages in the same Senate Report make Congress' intent even clearer. *See, e.g.*, S. Rep. 91-1252, at 9 ("No longer … will Presidential security depend on differing local ordinances, some of which may be of dubious constitutionality. Instead, [the bill] will provide for consistent, uniform enforcement of a narrow, precisely drawn statute that proscribes specific conduct for the protection of the President"). And, in describing Section 1752's purpose, the Senate Report expressly explained that, in the "special case" of "a temporary Presidential visit," "where flexibility must be maintained and there is insufficient time to publicly designate restricted areas by regulation," "knowing and willful entry or presence in a posted, cordoned off, or otherwise restricted area is made unlawful." S. Rep. 91-1252, at 9 (emphasis added). The fact that the Senate Report described what must be "knowing and willful" as the entry into the restricted area—but made no reference to a protectee's visit—strongly and singularly supports the view that the federal-protectee requirement was not subject to the *mens rea* requirement. In sum, Section 1752's history is, if anything, significantly more conclusive than the limited historical evidence the Court found dispositive with respect to Section 111 in *Feola*.

In reaching that conclusion, *Groseclose* also weighed the fact that, just as in *Feola*, "'almost everything proscribed [under Section 1752] [was already] outlawed in some form or other

at the State or local level.'" *Groseclose*, at 17 (quoting S. Rep. 91-1252, at 9); *see also id.* ("'Subsection (a) makes these activities a Federal offense so that the Secret Service has the authority to prevent such activities.'"). Furthermore, to the extent a comparison between penalties is meaningful under *Feola* (*but see supra*), *Groseclose* observed that "the original penalty for violating § 1752 was capped at six months' imprisonment, *see* 18 U.S.C. § 1752(b) (1970)," which is consistent with the maximum "penalty commonly leveled against ordinary trespassers, *see, e.g.*, D.C. Code § 22-3302," and the maximum penalty for "those who disrupt congressional proceedings during the normal course of business when no Secret Service protectee is visiting, *see* 40 U.S.C. § 5109(b)." *Id.*

## III.   CONGRESS' MODEST AMENDMENTS IN 2006 DID NOT "RECONCEPTUALIZE[]" SECTION 1752, AND *GROSECLOSE*'S CONTRARY CONCLUSION IS UNPERSUASIVE

After helpfully (and correctly) framing the issue, and after helpfully (and correctly) finding the pre-2006 version of 1752 analogous in all respects relevant under *Feola* to Section 111, *Groseclose* nonetheless discerned a dispositive "reconceptualiz[ation]" of 1752 in Congress's 2006 amendments. In the view of the *Groseclose* court, that reconceptualization transformed the federal-protectee requirement from jurisdictional to substantive. That conclusion is incorrect, and none of the considerations identified in *Groseclose* as supporting it is persuasive. As explained below, the limited amendments made by the USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, 120 Stat. 192 (2006), simply do not bear the weight that *Groseclose* places on them. Instead, *Groseclose*'s perceived reconceptualization is not actually borne out by the record.

At the outset, *Groseclose* references (at 8) the fact that Congress "redraft[ed] the statute to place the three triggering conditions into the definitional section." It is not clear how much analytical weight *Groseclose* attached to that observation, but, regardless, the observation is both

incorrect and unavailing. The 2006 enactment did not move "the three triggering conditions" (*i.e.*, the conditions now in Section 1752(c)(1)(A) to (C)) into any "definitional section." *See* 18 U.S.C. § 1752 (2006). In fact, that definitional section (18 U.S.C. § 1752(c)(1)) was not enacted until 2012. *See* Pub. L. 112-98, § 2, 126 Stat. 26 (Mar. 8, 2012). As relevant here, the 2006 amendments simply (i) added a new subsection (then-numbered 1752(a)(2)) criminalizing trespass in areas restricted in connection with "National Special Security Events (NSSEs) … that occur when the Secret Service protectee is *not* in attendance," H.R. Conf. Rep. No. 109-133 (2006) (emphasis added), 2006 U.S.C.C.A.N. 184, 203; and (ii) enhanced the unaggravated maximum penalties under the statute from 6 months to a one year. In any event, chronological errors aside, it is not clear—nor does *Groseclose* explain—why the relocation of certain elements to a separate definitional section would transform the federal-protectee requirement from jurisdictional to substantive.

Next, *Groseclose* (i) observes that, in 2006, Congress increased the maximum penalties for 1752 from six months to one year; and (ii) points to legislative history suggesting that Congress did so to bring the penalties in line with the penalties for interfering with Secret Service personnel generally (18 U.S.C. § 3056). *Groseclose*, at 18. This, in *Groseclose*'s view, transformed the character of the statute from "duplicating state prohibitions to confer federal jurisdiction" to "an *aggravated* offense leveling an added penalty against those who endanger Secret Service protectees." *Id.* at 18. But this theory misconstrues both the *Feola* inquiry and the 2006 amendments.

Begin with *Feola*. In *Feola*, too, the maximum penalties imposed by Section 111's predecessor (three years) were "harsher … than [was] typically imposed for" the corresponding unaggravated state-law crime (there, "unarmed assault on a private citizen"). 420 U.S. at 702

(Stewart, J., dissenting). Further, in *Feola*, too, the penalties were out of line with the comparable federal assault offenses based on a different federal nexus (*i.e.*, federal assault within the admiralty, maritime, or territorial jurisdictional of the United States). *Id.* at 703 (Douglas, J. dissenting). Indeed, the *Feola* dissenters pointed to these very penalty features as grounds to require knowledge of the officer-victim's federal status. The Court, however, found the opposite, determining that Section 111's officer-victim requirement was jurisdictional and did not require *scienter*. The same outcome must follow here, where the penalty discrepancies with comparable statutes are, if anything, much less significant than *Feola*.

*Groseclose*'s inferences from the 2006 amendments are also strained in their own right. The 2006 Conference Report accompanying the amendments—which *Groseclose* cites as proof of its underlying conclusion (at 18)—indicates that the lead change in the 2006 amendments was the addition of a new provision (then codified as subsection 1752(a)(2)) that "expand[ed] 18 U.S.C. § 1752 to criminalize such security breaches at [National Special Security Events] NSSEs that occur when the Secret Service protectee is *not* in attendance." H.R. Conf. Rep. 109-333, at 110 (emphasis added); *see* also Pub. L. 109-177, Title VI, § 602(a)(1)(C), (b)(1), 120 Stat. 252 (Mar. 9, 2006). The fact that the 2006 statute's flagship innovation was targeted at events where the presence of Secret Service protectees was *not* required negates, rather than supports, *Groseclose*'s theory that the amendments were intended to create "an *aggravated* offense leveling an added penalty against those *who endanger Secret Service protectees*."   *Groseclose*, at 18 (emphasis added).

Furthermore, that key innovation—*i.e.*, the introduction of protections for certain Secret Service events regardless of a protectee's presence—reasonably explains the 2006 statute's accompanying increase in statutory penalties. Having created a new subsection to protect certain

Secret Service events more generally—events at which, again, no protectee is necessarily present—Congress had good reason to realign the statutory maximum penalty available under the overall statute, so that violators of the new subsection would be subject to the same penalties as those who violated 18 U.S.C. § 3056(d)—a provision that admittedly serves similar purposes to the new prohibition enacted in 2006. *Cf. Groseclose*, at 18. But the fact that Congress increased the statutory maximum to accommodate a new offense codified under 18 U.S.C. § 1752—an offense that turned (and still turns) on a different federal nexus tethered to "events designated as a special event of national significance," 18 U.S.C. § 1752(c)(1)(C)—does not mean that Congress intended a wholesale (and undisclosed) "reconceptualiz[ation]" of the pre-existing prohibitions.

In reality, *Groseclose*'s reliance on Section 1752's penalties is unconvincing on its own terms. *Groseclose* observes that the District of Columbia generally sets a statutory maximum of six months for unaggravated trespass whereas the 2006 amendments increased the statutory maximum for unaggravated violations of Section 1752(a) to one year. *Groseclose*, at 17 (citing D.C. Code § 22-3302)). But other jurisdictions impose more significant penalties for comparable forms of trespass. In Virginia, for example, the offenses of "trespass after having been forbidden to do so" and "trespass on posted property" are punishable for up to 12 months in jail. *See* Va. Code Ann. § 18.2-119 (making "[t]respass after having been forbidden to do so" a "Class 1 misdemeanor"), § 18.2-134 (making "[t]respass on posted property" a "Class 1 misdemeanor"), § 18.2-11(a) (Class 1 misdemeanors punishable by up to twelve months in jail). And, regardless, if one puts aside the federal-nexus element in Section 1752(c)(1)(A) through (C), the trespass conduct prescribed under Section 1752(a)(1) is—and should be treated as—more aggravated than lesser forms of trespass involving, say, certain open lands. *See, e.g.*, Va. Code Ann. § 18.2-132 (making "[t]respass by hunters and fishers" on "the lands, waters, ponds, boats or blinds of

another" a "Class 3 misdemeanor"), § 18.2-11(c) (Class 3 misdemeanors punishable by a fine of not more than $500). The reason is straightforward: regardless of the federal-nexus requirement in § 1752(c)(1)(B), a trespass under Section 1752(a)(1) always requires the added proof that the area was "any posted, cordoned off, or otherwise restricted area." By overlooking that feature, *Groseclose*'s penalty comparison mixes apples and oranges.

The "reconceptualiz[ation]" perceived by *Groseclose* also gives rise to at least two other problems. For one thing, it fails to account for the fact that, since *Feola*, a similar legislative evolution happened with respect to Section 111, and the increased penalties there did not alter the *mens rea* required pursuant to that statute. In 2002, the Federal Judiciary Protection Act, Pub. L. No. 107-273, § 11008(a), 116 Stat. 1758, increased the maximum sentences for violations of 18 U.S.C. § 111(a) and (b) from three years to eight years and from ten years to twenty years, respectively. Moreover, as part of the same 2002 law, Congress directed the Sentencing Commission to review and amend the guidelines applicable to violations of Section 111 to ensure they were "adequate to ensure punishment at or near the maximum penalty for the most egregious conduct covered by the offense." Pub. L. No. 107-273, § 11008(e). In response, the Sentencing Commission adopted Amendment 663, which became effective in 2004, and which increased the "official victim" enhancement under U.S.S.G. § 3A1.2 from three levels to six levels where the offense guideline is from Chapter Two, Part A. *See United States v. Curtis*, 799 F. App'x 639, 641 (10th Cir. 2020) (describing revisions to the Sentencing Guidelines). And yet, two decades later, *Feola*'s holding that a defendant need not know whether his or her victim is a federal officer remains good law. If increasing the penalties for violations of Section 111 by five years (or ten, for aggravated assault under Section 111(b)) did not create an expanded *mens rea* requirement for Section 111, there is no reason why a mere six-month increase should have done so with respect

13

to Section 1752.[1] It is simply too strained to think that Congress, without ever saying so, took indirect action to raise the *mens rea* requirements—narrowing the statute and jeopardizing enforcement[2]—by amending the statute's penalties and adding another category of offenses—all measures that broadened the statute and fostered enforcement. *Groseclose* identifies no other statute that has ever been "reconceptualized" in such a way.

*Groseclose*'s reliance on the Sentencing Guidelines is unavailing for similar reasons. *Groseclose* posits that the presence of a protectee is not "jurisdictional" in part because "the [Guidelines] offense is bumped by 2 levels if the trespass occurred at 'any restricted building or grounds' and by 4 levels if it happened 'at the White House or its grounds, or the Vice President's official residence or its grounds.'" *Groseclose*, at 14-15 (citing U.S.S.G. § 2B2.3). But, once again, the same is true of Section 111. There, too, the Sentencing Commission, carrying out Congress's

---

[1] A similar point was made in *Burwell*, where the D.C. Circuit rejected the argument that section 924(c)(1)(B)(ii)'s enhanced penalty – a mandatory, consecutive 30 years to life for possession of a machinegun – compelled that the presumption in favor of a scienter requirement should apply to knowledge of the nature of the firearm possessed. *Burwell*, 690 F.3d at 206-07.

[2] As the government has noted previously, requiring knowledge of a protectee's presence significantly narrows enforcement. Indeed, the *Burwell* court acknowledged "the practical distinction between proving objective facts and subjective mental states." *Burwell*, 690 F.3d at 509. It is one thing to prove an individual's knowledge of the President's whereabouts, but another thing entirely to require that the government prove that the defendant is aware of other Secret Service protectees, such as spouses of visiting foreign dignitaries or the family members of a Vice President. It would also be difficult to show that a defendant knows that someone protected by the "Secret Service" is in an area—which *Groseclose* proposes as an alternative—as a dignitary's protectee status is not often known (aside for the President, Vice President, and some of their family members), and Secret Service agents are, generally, not readily identifiable to the public. Under *Groseclose,* a defendant breaching a restricted area and even committing an act of violence there (18 U.S.C. § 1752(a)(4)) escapes liability if he did not know, for example, that the Vice President's daughter was in the area, or that the parked cars of a motorcade indicated that someone being protected by the Secret Service (as opposed to some other agency) was there. Even in a case involving an area being visited by a more well known protectee, proving not just that a defendant trespassed and that the defendant knew an area was blocked off, but also that she or he actually knew why the area was restricted—in what is usually a misdemeanor case—could pose a challenge in many instances.

direction, has, since *Feola*, specifically increased the Guidelines for assaults on federal officers. *See supra*. Yet the existence of an official victim enhancement for assaults on federal officers has not changed the *mens rea* required for a violation of Section 111. Section 1752 should be treated no differently.[3]

    *Groseclose* is also difficult to reconcile with other post-*Feola* cases in which courts, including the Supreme Court, have not applied *mens rea* requirements to elements that the courts deemed jurisdictional. Consider, for example, 18 U.S.C. § 641, which makes it a crime to "embezzle[], steal[], purloin[ing], or knowingly convert[] to [one's] use or the use of another ... any ... thing of value of the United States." Presented with the *mens rea* question at issue here, courts, including the D.C. Circuit, have held that proof that "the statutory requirement that the stolen property in fact belonged to the Government was to lay the basis for federal jurisdiction and that the defendant's knowledge of the jurisdictional fact is irrelevant." *United States v. Jermendy*, 544 F.2d 640, 641 (2d Cir. 1976) (citing *Feola*); *see also United States v. Baker*, 693 F.2d 183, 186 (D.C. Cir. 1982) ("It is now well established that the statutory requirement that the stolen property belonging to the government merely furnishes the basis for federal jurisdiction and that defendant's knowledge of this jurisdictional fact is irrelevant." (citing cases)); *United States v. Crutchley*, 502 F.2d 1195, 1201 (3d Cir. 1974); *United States v. Jeffery*, 631 F.3d 669, 675-676 (4th Cir. 2011); *United States v. Boyd*, 446 F.2d 1267, 1274 (5th Cir. 1971); *United States v. Sivils*, 960 F.2d 587, 595 (6th Cir. 1992); *United States v. Hicks*, 15 F.4th 814, 817 (7th Cir. 2021); *United*

---

[3] That the Guidelines do not dictate the meaning of Congress' enactments is not surprising. The Sentencing Commission "is a permanent body that can amend the guidelines each year" on the basis of, among other things, evolving empirical data. U.S.S.G. § 1A1.5. The meaning of federal statutes, in contrast, is ordinarily fixed at the time of enactment and does not change absent amendment. *See, e.g.*, *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1738 (2020) (courts "normally interpret[] a statute in accord with the ordinary public meaning of its terms at the time of its enactment.").

*States v. Denmon*, 483 F.2d 1093, 1094-1095 (8th Cir. 1973); *United States v. Howey*, 427 F.2d 1017, 1018 (9th Cir. 1970); *United States v. Speir*, 564 F.2d 934, 938 (10th Cir. 1977) (en banc).

The same is true of 18 U.S.C. § 1361, which makes it a crime to "willfully injure[] or commit[] any depredation against any property of the United States." There, too, presented with the same *mens rea* question, court have held that proof of knowledge that the property belongs to the government is not required. *See, e.g.*, *United States v. LaPorta*, 46 F.3d 152, 159 (2d Cir. 1994); *United States v. Krause*, 914 F.3d 1122, 1127 (8th Cir. 2019). Stealing what one knows to be public property, or destroying or damaging what one knows to be public lands or government property could be viewed, in some ways, as a more aggravated offense than doing such things without such knowledge—just like trespassing in a restricted area where one knows a protectee is or will be present. But, as the case law confirms, the fact that an element could arguably be conceived as aggravating in some way is not enough to displace its jurisdictional status for *mens rea* purposes.

Finally, consider the Supreme Court's decision in *United States v. Yermian*, 468 U.S. 63, 64 (1984). *Yermian* extended *Feola* to prosecutions under 18 U.S.C. § 1001, which, at the time, criminalized "[w]hoever, in any matter within the jurisdiction of any department or agency of the United States[,] knowingly and willfully" made false statements, among other conduct. *Id.* at 68. The Court concluded that a defendant need not know that the false statement concerned a matter under federal jurisdiction, finding its reading supported by "plain language"—because the statute did not include an express requirement that the defendant know that the matter was within federal jurisdiction—and by the absence of support in the legislative history for such a reading. *Id.* at 68, 75.

Nor can *Yermian*'s outcome be discounted because, in the version of 18 U.S.C. § 1001 at issue in *Yermian*, the federal-nexus requirement preceded (as opposed to follow) the word "knowingly." In considering the parties' arguments, the *Yermian* Court also considered an earlier version of the statute that tracked the same structure of 1752. *See* 468 U.S. at 72 (quoting Act of June 18, 1934, ch. 587, 48 Stat. 996, which criminalized "[w]hoever shall knowingly and willfully falsify or conceal or cover up by any trick, scheme, or device a material fact, or make ... any false or fraudulent statements or representations, … in any matter within the jurisdiction of any department or agency of the United States"). The Court found that language "equally clear," *id.* at 69 n.6, reasoning that "[n]oticeably lacking from this enactment is any requirement that the prohibited conduct be undertaken with specific intent to deceive the Federal Government, or with actual knowledge that false statements were made in a matter within federal agency jurisdiction." *Id.* at 72-73; *see also id.* at 69 n.6 (observing that "[t]he jurisdictional language of that provision appeared as a separate phrase at the end of the description of the prohibited conduct"). The same logic applies here.

Finally, *Groseclose* dismisses the government's argument that extending the *mens rea* to the federal-protectee requirement is not necessary to separate culpable from innocent conduct as "flip[ping] the rules of statutory interpretation on their head" (*Groseclose*, 10), suggesting that this principle only applies when a statute is silent on *mens rea* or when the text is ambiguous. But as cases applying *Feola* show, courts examine the line between culpable and innocent conduct as part of their analysis when determining whether a statute is jurisdictional, including for statutes that do include an express *mens rea*. *See, e.g.*, *Jeffery*, 631 F.3d at 677 (determining that requirement that property belong to "the United States" in prosecution under 18 U.S.C. 641 was "jurisdictional only," following *Feola* because, regardless of knowledge of the property's ownership, Jeffery's

17

"conduct was nonetheless wrongful, because he took something that did not belong to him");

*United States v. Allen*, 788 F.3d 61, 69 (2d Cir. 2015) (in statute criminalizing "willfully" setting

fire to federal land, observing that "[a]rson is hardly otherwise innocent conduct" and declining to

require knowledge that the land is federal). To the extent it is necessary to resolve any lingering

ambiguity, the same approach would be appropriate here.[4]

## CONCLUSION

For the foregoing reasons and the reasons stated in prior filings, the Carnell's interpretation

of Section 1752 should be rejected.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Samantha R. Miller*
SAMANTHA R. MILLER
Assistant United States Attorney
New York Bar No. 5342175
United States Attorney's Office
For the District of Columbia
601 D Street, NW 20530
Samantha.Miller@usdoj.gov

TIGHE BEACH
Assistant United States Attorney
Colorado Bar No. 55328
United States Attorney's Office
District of Columbia
202-252-1788
Tighe.Beach@usdoj.gov

---

[4] *Groseclose* also invoked, in passing, the rule of lenity. *Groseclose*, at 20. But the rule of lenity applies only if, "after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." *United States v. Castleman*, 572 U.S. 157, 172-173 (2014) (citation omitted); *Burwell*, 690 F.3d at 515; *Shular v. United States*, 140 S. Ct. 779, 789 (2020) (Kavanaugh, J., concurring). And for the reasons above, no such grievous ambiguity exists here.