UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 23-cr-139 (BAH) |
| | : | |
| CHRISTOPHER CARNELL & | : | |
| DAVID WORTH BOWMAN, | : | |
| | : | |
| Defendants. | : | |

**GOVERNMENT'S NOTICE OF ADDITIONAL AUTHORITIES
REGARDING THE MENS REA REQUIRED UNDER 18 U.S.C. § 1752**

The United States by and through its attorney, the United States Attorney for the District of Columbia, hereby provides the attached briefing—which was filed last week in *United States v. Irwin et al.*, No. 1:21-cr-589-RDM, ECF No. 102 (Jan. 29, 2024)—addressing a legal question as to which the parties disagree in this case: whether, to prove the defendants' guilt under 18 U.S.C. §§ 1752(a)(1) and (2), the government is required to show not only that the defendants knew that they were in an area that was "posted, cordoned off, or otherwise restricted," but also that they knew that "the President or other person protected by the Secret Service [wa]s or w[ould] be temporarily visiting" the relevant building or grounds, § 1752(c)(1), (c)(1)(B). The answer is no.[1]

As explained in the attached briefing, it is well-settled that, "[b]ecause jurisdictional elements normally have nothing to do with the wrongfulness of the defendant's conduct, such

---

[1] Although the government previously presented its position on this issue in prior filings in this case (*see* ECF Nos. 72, 82), the government submits its recent filing in *Irwin* as it more comprehensively addresses recent developments and decisions on the issue and, accordingly, should better assist the Court in deciding the question. The government further notes, that, since its filing in *Irwin*, Judge Cobb, who had initially adopted the government's reading of Section 1752, has now adopted the defendants' reading, as reflected by defendant Christopher Carnell's recent submission, ECF No. 93. *Compare United States v. Samsel*, No. 21-cr-537-JMC, ECF No. 313 (provisionally accepting the government's position), *with Samsel*, ECF No. 345 at 31-33 (adopting the defendants' reading of Section 1752, but "anticipat[ing] that additional questions may arise surrounding this statute, and the D.C. Circuit itself may well offer guidance soon").

elements are not subject to the presumption in favor of scienter." *Rehaif v. United States*, 139 S. Ct. 2191, 2196 (2019). Here, the federal-protectee element of Section 1752—*i.e.*, the requirement that "the President or other person protected by the Secret Service [wa]s or w[ould] be temporarily visiting" the area—is jurisdictional. The Supreme Court's decision in *United States v. Feola*, 420 U.S. 671 (1975), which declined to extend a mens rea requirement to the federal-nexus requirement presented in that case, makes that clear. Indeed, as Judge Cooper recently concluded in *United States v. Groseclose*, a court considering Section 1752 "as it stood when first enacted as part of the Omnibus Crime Control Act of 1970, Pub. L. No. 91-644, 84 Stat. 1880, 1891-1892 (1971), . . . would be hard-pressed to see meaningful daylight between *Feola*" and the present case. *United States v. Groseclose*, No. 1:21-cr-311-CRC, ECF No. 99, at 16 (Jan. 5, 2024). That is because Section 111 (the statute at issue in *Feola*) and Section 1752 were enacted at least in part to ensure uniformity of enforcement, the main factor considered by *Feola* to determine whether an element is jurisdictional.

To be sure, *Groseclose* ultimately concluded that, when Congress later amended Section 1752 in 2006 by increasing the penalty for a violation from six months to one year, "Congress seems to have reconceptualized § 1752 and created a different sort of federal crime." *Id.* at 18. As the United States previously has explained, that last turn was wrong. ECF No. 72. That "reconceptualiz[ation]" theory—which infers a major change in the statute's mens rea requirement from Congress' modest amendments to the applicable statutory maximum and little else—misconstrues both the *Feola* inquiry (which largely disregarded the statute's penalties) and the 2006 amendments. It also strains credulity. Had Congress wanted to change the statute's mens rea, it would have done so explicitly, just as it did with other amendments introduced in 2006, and as it did with the 2012 amendments. It did not. Against this backdrop, and as explained in more detail

in the attached briefing, *Groseclose*'s conclusion that a minor penalty enhancement—whose justification makes no mention of a change to mens rea—nonetheless "reconceptualized" the statute and obliquely and dramatically amended its mens rea requirement is unsupported.

The practical implications of the "reconceptualize[ation]" inferred by *Groseclose* cannot be overstated. As of this filing, the government has charged over 1,200 individuals with violating Section 1752 on January 6, 2021, in addition to prosecutions stemming from violations on other dates. Requiring the government to prove a heightened level of knowledge for these misdemeanor convictions could, depending on the procedural posture, jeopardize those prosecutions.

Such a requirement could also significantly curtail the future enforcement of the statute, rendering it unworkable in a wide range of settings involving Secret Service protectees. Nor would those implications be limited to instances in which, as on January 6, 2021, the statute applies because a Secret Service protectee "is or will be temporarily visiting" a restricted area, 18 U.S.C. § 1752(c)(1)(B). To the contrary, the defendants' reading would significantly complicate application of Section 1752 even where, for example, an individual enters and engages in an act of physical violence in a restricted area "of … the Vice President's official residence or its grounds"—seemingly forcing the government to prove beyond a reasonable doubt that the defendant in fact subjectively knew that the restricted area was within the Vice President's "official residence." As this and similar examples illustrate, by making Section 1752's enforcement unworkable in many situations, the defendants' new interpretation of the mens rea requirement for a 50-year-old statute could effectively force the government to revert to a patchwork of state-law violations—precisely the situation that Section 1752 was intended to rectify. The correct conclusion is that the federal-protectee requirement remains a jurisdictional one, just as it was when the statute was enacted.

Finally, and in any event, even if the Court were to adopt the defendants' reading of Section 1752, the Court should still find the defendants guilty based on the stipulated facts, which amply establish that, at the time of the offense, they knew that the Vice President was temporarily visiting the U.S. Capitol.  *See* ECF 76-1 (Carnell Stip. Trial Facts) ¶¶ 11-12, 19-20; Carnell Stip. Trial Exs. 12.1, 12.2, 19.1, 19.2, 19.3, 20; ECF 76-2 (Bowman Stip. Trial Facts) ¶¶ 11-12, 19-21; Bowman Stip. Trial Exs. 12.1, 12.2, 19.1, 19.2, 19.3, 20.1, 20.2, 21.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ Francesco Valentini*
FRANCESCO VALENTINI
D.C. Bar No. 986769
Deputy Chief
Capitol Siege Section, Breach and Assault
United States Attorney's Office (DC)
601 D Street NW
Washington, D.C.  20579
(202) 598-2337
francesco.valentini@usdoj.gov

SAMANTHA R. MILLER
Assistant United States Attorney
New York Bar No. 5342175
United States Attorney's Office
For the District of Columbia
601 D Street, NW 20530
Samantha.Miller@usdoj.gov

TIGHE BEACH
Assistant United States Attorney
Colorado Bar No. 55328
United States Attorney's Office
District of Columbia
202-252-1788
Tighe.Beach@usdoj.gov