UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | CASE NO. 23-cr-139 (BAH) |
| v. : | |
| : | |
| CHRISTOPHER CARNELL, ET. AL., : | |
| : | |
| Defendants. : | |

**GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTIONS TO RECONSIDER CONVICTIONS ON COUNT ONE**

Pursuant to the Court's July 3, 2024, Minute Order, the government responds to the defendants' motions filed on June 30, July 1, and July 3, 2024. ECF No. 124, 125, and 129. The Supreme Court's holding in *Fischer v. United States* renders the elements that the Court considered at trial in this case incorrect. 144 S. Ct. 2176 (2024). This amounts to reversible trial error, which warrants vacating the defendants' convictions on Count One. *See United States v. Reynoso*, 38 F.4th 1083, 1090–91 (D.C. Cir. 2022). The defendants, however, frame their motions as something different and far more extreme: as motions to reconsider and reverse the finding of guilt and enter a judgment of acquittal (ECF Nos. 124, 129), and as motions to reconsider the Court's denials of the defendants' pre-trial motions to dismiss (ECF Nos. 125, 129). Those contentions lack merit. The defendants' request that this Court reconsider the evidence and render a judgment of acquittal is foreclosed by both principles of procedural regularity and D.C. Circuit precedent holding that "a defendant cannot make out a sufficiency challenge as to offense elements that the government had no requirement to prove at trial under then-prevailing law." *Reynoso*, 38 F.4th at 1091 (explaining that any error in those circumstances "is 'properly understood as a claim of trial error' in failing to instruct the jury on the omitted element"). And the defendants' request that the Court

1

reconsider its denials of the defendants' pre-trial motions to dismiss is foreclosed by the settled principle that charging documents generally need only "echo[] the operative statutory text while also specifying the time and place of the offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). As explained below, the only remedy plausibly available to the defendants at this juncture is that the Court vacate their convictions on Count One and set the case for retrial on this count.

I. **Procedural Background**

Christopher Carnell and David Bowman were indicted on April 27, 2023. The grand jury charged them each with the following: 1) Obstruction of an Official Proceeding and Aiding and Abetting under 18 U.S.C. § 1512(c)(2); 2) Entering and Remaining in a Restricted Building or Grounds under 18 U.S.C. § 1752(a)(1); 3) Disorderly and Disruptive Conduct in a Restricted Building or Grounds under 18 U.S.C. § 1752(a)(2); 4) Entering and Remaining on the Floor of Congress under 40 U.S.C. § 5104(e)(2)(A); 5) Disorderly Conduct in a Capitol Building under 40 U.S.C. § 5104(e)(2)(D); and 6) Parading, Demonstrating, or Picketing in a Capitol Building under 40 U.S.C. § 5104(e)(2)(G). Indictment, ECF No. 22.

On February 12, 2024, the parties appeared for a Stipulated Bench Trial. The defendants expressly reserved the arguments advanced by the petitioner in *Fischer v. United States*, No. 23-5572, which was pending before the Supreme Court on April 3, 2024. *See* ECF No. 76-1 at 14 (reserving the arguments in Carnell's Motion to Dismiss Count One (ECF No. 34) and Motion *in Limine* for Count One (ECF No. 43)); ECF No. 76-2 at 16-17 (reserving the same for Bowman). As the Court knows, this reservation was for the sole purpose of an appeal, in light of *Fischer*.

At the trial, the defendants were convicted on all counts. They admitted to extensive Statements of Fact that supported these convictions. *See* ECF No. 76. The Court properly applied

the following elements to Count One, Obstruction of an Official Proceeding under 18 U.S.C. § 1512(c)(2), which had been affirmed in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023):

1. The defendant attempted to or did obstruct or impede an official proceeding;

2. The defendant intended to obstruct or impede the official proceeding;

3. The defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding; and

4. The defendant acted corruptly. *See* ECF No. 76-1 at 1.

While pending sentencing, on June 28, 2024, the Supreme Court issued its opinion *in Fischer v. United States*. *Fischer*, 144 S. Ct. 2176 (2024).

The defendants filed the motions at issue on June 30, July 1, and July 3, 2024. ECF No. 124, 125, and 129 (Bowman's Motion to Join).

**II.     Argument**

    **a. The Motion to Reconsider the Guilty Verdict is Procedurally Improper**

Before turning to the merits, the defendant's Motions (ECF No. 124 and 125) are predicated upon the Court's authority to reconsider the evidence in light of a change of the law. According to the defendants, the Court can do so as part of its inherent authority. *Id.* (citing *United States v. DaSilva*, 21-cr-564, 2024 WL 519909 (D.D.C. Feb. 8, 2024)). In doing so, their motions are not based on or governed by Rule 29 or any specific Federal Rule. The government respectfully disagrees with *DaSilva*'s outcome and the underlying analysis of this inherent authority.

The Supreme Court has previously considered a trial court's authority to reconsider past acquittals. For example, in 2005, the Supreme Court considered a trial court's reconsideration of a mid-trial acquittal. *Smith v. Massachusetts*, 543 U.S. 462 (2005). That acquittal, the Court held, was a final ruling, not subject to revision, "unless the availability of reconsideration has been

3

plainly established by pre-existing rule or case authority expressly applicable to midtrial rulings on the sufficiency of the evidence." *Id.* at 473.

Likewise, the Supreme Court has considered cases in which a trial court attempts to revisit a jury's finding of guilt. In *Carlisle v. United States*, 517 U.S. 416 (1996), the Supreme Court rejected the trial court's grant of an untimely motion for a judgment of acquittal. In that case, the defendant moved for a judgment of acquittal one day later than the rules permitted, and the trial judge initially denied the motion both on the merits and as untimely. *Id.* at 418. At sentencing, the trial court reversed course and entered a judgment of acquittal. *Id.* The Supreme Court held this was improper. *Id.* at 433. In so ruling, the Court rejected the defendant's arguments that Federal Rule of Criminal Procedure 2 "vests the court with the supervisory power to enter judgment of acquittal" and that the trial court's "inherent supervisory power" provided such authority. *See id.* at 420–28. The Court explained: "Whatever the scope of this 'inherent power,' . . . it does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure." *Id.* at 426. Relevant here, the government is unaware of any Federal Rule of Criminal Procedure that would allow a district court to reopen a guilty verdict entered at the conclusion of a bench trial.

The government has endeavored to identify cases in which a trial court vacated or reconsidered its own bench verdict following a contested or stipulated trial. Beyond *United States v. DaSilva*, No. 21-cr-564 (CJN), 2024 WL 519909 (D.D.C. Feb. 8, 2024), there appears to exist scant authority indicating that this procedure is permissible. Indeed, some state appellate courts have expressly prohibited such a procedure.[1] In fact, the government was not able to find *any*

---

[1] *See People v. Dobson*, 25 N.Y.S.3d 313, 315 (N.Y. App. Div. 2016) ("A Trial Judge who has rendered a guilty verdict after a nonjury trial has neither inherent power nor statutory authority to reconsider his [or her] factual determination. Although he [or she] may correct clerical or

4

federal cases supporting the proposition that a trial court has the authority to reconsider a guilty verdict out of time, other than two district court cases: *DaSilva* and *United States v. Mendoza*, 390 F. Supp. 2d 925 (N.D. Cal. 2005).

In *Mendoza*, the district court "reconsidered its guilty verdict, vacated its finding of guilty, and dismissed the indictment" in an illegal re-entry case based on an intervening change in circuit law between the original verdict and the dismissal. 390 F. Supp. 2d at 928. But the government appealed such dismissal. In ruling, the Ninth Circuit did not directly address the propriety of the district court's reconsideration, because the Ninth Circuit had reheard *en banc* the case that had purportedly changed the law. *See United States v. Tafoya-Mendoza*, 232 F. App'x 675 (9th Cir. 2007), *as amended on denial of reh'g and reh'g en banc* (Aug. 17, 2007). However, the Ninth Circuit did reverse the district court's dismissal of the indictment and remanded for further proceedings. *Id.* In light of this appellate history, *Mendoza* lends scant support for the notion that district courts have authority to revisit their own guilty verdicts and dismiss the underlying charges.

In *DaSilva*, Judge Nichols chose to reconsider a previous conviction in another January 6 case, after he had subsequently determined a new reading of the *mens rea* requirement in 18 U.S.C. § 1752(a)(1) and (2). The defendant, Matthew DaSilva, was convicted following a bench trial of various offenses, including three violations involving 18 U.S.C. § 1752. *DaSilva*, 2024 WL 519909 at *1. In a later case, *United States v. Elizalde*, 23-cr-170 (CJN), 2023 WL 8354932 (D.D.C. Dec. 1, 2023), Judge Nichols concluded that a conviction under 18 U.S.C. § 1752 required proof of an

---

ministerial errors, he [or she] is without authority to reassess the facts and change a guilty verdict to not guilty." (quotations omitted)); *State v. Williams*, 891 So. 2d 26, 30 (La. Ct. App. 2004) ("We conclude that filing a motion for post verdict judgment of acquittal in a bench trial was procedurally improper.")

additional element that had not been included in the legal instructions in *DaSilva*.[2] He therefore reconsidered his findings of guilt as to Section 1752 offenses in *DaSilva*. 2024 WL 519909 at *7.

To justify this reconsideration, Judge Nichols held that a court's authority to reconsider interlocutory orders "logically extends to findings of guilty in bench trials," because findings of guilt do not divest the court of jurisdiction and permit appeal. *Id.* at *3–4. But a finding of guilt in a criminal case is not an ordinary interlocutory. To the contrary, the Federal Rules of Criminal Procedure set out in detail the narrow circumstances in which a guilty verdict can be revisited. *See, e.g.*, Fed. R. Crim. P. 29, 33. And the D.C. Circuit has repeatedly emphasized the finality of jury verdicts. *Cf. United States v. Campbell*, 684 F.2d 141, 151–52 (D.C. Cir. 1982) (holding that alleged juror misconduct did not justify overturning verdict and emphasizing "the finality of the verdict"); *United States v. Williams-Davis*, 90 F.3d 490, 505 (D.C. Cir. 1996) (emphasizing the importance of "[p]reserving the finality of jury verdicts" to denying defendant a hearing on post-trial juror allegations of pre-deliberation discussions).

It is unclear why the Court should approach the finality of its verdict any differently than a verdict rendered by a jury. *See People v. Maharaj*, 679 N.E.2d 631, 657 (N.Y. 1997) ("Simply

---

[2] Specifically, Judge Nichols concluded that conviction under Section 1752 required proof, beyond a reasonable doubt, that the defendant "knew that a Secret Service protectee would be present at the Capitol." *DaSilva*, 2024 WL 519909 at *6. The government, and many courts within this district, disagree with Judge Nichols and do not require this specific knowledge of a Secret Service protectee's presence. *See United States v. Carnell et al.*, 23-cr-139 (BAH) (Memorandum Opinion, Feb. 15, 2024, ECF No. 98 at 10-12); *United States v. Easterday*, 22-cr-404 (JEB), 2024 WL 1513527, at *10 (D.D.C. Apr. 8, 2024); *United States v. Warnagiris*, 21-cr-382 (PLF), ECF No. 128 at 4–5 (D.D.C. Mar. 28, 2024); *United States v. Chambers*, 23-cr-300 (DLF) (D.D.C. Mar. 14, 2024); *United States v. Kenyon*, No. 23-cr-101 (ABJ), (Mar. 12, 2024); *United States v. Ibrahim*, No. 21-cr-496 (TJK) (Apr. 16, 2024); *United States v. Smith*, No. 23-cr-71 (RDM), Trial Tr. at 82-97 (May 10, 2024); *United States v. Nester*, 22-cr-183 (TSC) (D.D.C. Mar. 5, 2024); Trial Tr. at 1199–1200; Mem. Court's Responses to Jury Questions at 4, *United States v. Rhine*, No. 21-cr-687 (RC), ECF No. 104 (D.D.C. Apr. 24, 2023); Trial Tr. at 330–32, *United States v. Griffin*, No. 21-cr-92 (TNM), ECF No. 106 (D.D.C. Mar. 22, 2022). The D.C. Circuit is expected to decide this issue in *United States v. Griffin*, No. 22-3042 (oral argument held Dec. 4, 2023).

because the court was acting as both fact finder and Judge of the law does not allow for a result different from that dictated when a court presiding over a jury trial [made a legal error] . . . . After formal rendition of a verdict at a bench trial, a trial court lacks authority to reweigh the factual evidence and reconsider the verdict.") (citations omitted). If a jury were to return a guilty verdict and, later, some other juries returned different verdicts on allegedly similar facts and under similar legal instructions, the court would not recall the jury, reopen the verdict, and ask the jury to deliberate again. Indeed, even in the context of Rule 29, despite the fact Rule 29 only refers to juries, courts have held that the same standard applies to bench trials and judges too. *See United States v. Jabr*, 18-cr-105-PLF, 2019 WL 13110682, at *4 (D.D.C. May 16, 2019) (collecting cases).

The *DaSilva* opinion attempts to square this circle largely through a technical interpretation of the Federal Rules of Criminal Procedure distinguishing between juries and judges as factfinder for purposes of Rule 29. This interpretation is almost entirely underpinned by *DaSilva*'s statement that "[j]uries return guilty 'verdicts,' judges render 'findings' of guilty." 2024 WL 519909 at *5. But courts regularly use the terms "verdict of guilty" and "finding of guilt" interchangeably, regardless of whether the factfinder is a jury or judge—even in some of the cases *DaSilva* cites. *See, e.g.*, *Ex Parte Lange*, 85 U.S. 163, 201–02 (1873) (referring to jury's "finding" of guilt); *Smith v. Massachusetts*, 543 U.S. 462 (2005) (discussing impact of judge's "directed verdict" on double jeopardy considerations).

Thus, as a matter of law, the procedural framing – a Motion to Reconsider – is inadequate.

    **b. The Proper Remedy is Vacatur**

Putting defendants' erroneous reliance on reconsideration aside, the government agrees that the elements used by the Court at sentencing no longer implement the controlling reading of

7

the statute, in light of *Fischer*. The fact that the Court considered elements that *later* turned out to be incorrect may amount to an instructional, or trial, error, necessitating that the Court vacate the defendants' convictions on that count. *United States v. Reynoso*, 38 F.4th 1083, 1090–91 (D.C. Cir. 2022) ("[A] defendant cannot make out a sufficiency challenge as to offense elements that the government had no requirement to prove at trial under then-prevailing law."). On a procedural record like the one in this case, the D.C. Circuit held that "a sufficiency claim is a non sequitur." *Id*. at 1091. "If the [finder-of-fact], consistent with then-prevailing law, is never asked to find the existence of something later established to be an offense element, there is no freestanding insufficiency-of-the-evidence claim as to that element." *Id.* at 1090. Since the Court drew the elements for Count One from then-prevailing law, it was not asked to find the existence of the additional element required by the Supreme Court in *Fischer*.

Given the current pre-sentencing procedural posture, the defendants' apparent trial-error claim is best understood as an (untimely) Rule 33 Motion. Fed. R. Crim. Pro. 33(a) (the Court may grant "a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment."); *United States v. Kirsch*, 151 F. Supp. 3d 311, 315 (W.D.N.Y. 2015) (noting that a significant intervening change in the law may constitute a valid basis to extend time under Rule 45(b)(1)(B)). And, as in any Rule 33 motion, the proper remedy, if any, is a new trial.

In addition to being procedurally proper, vacatur – as opposed to a judgment of acquittal – is also most consistent with *Fischer*'s substantive holding. As the Court knows, *Fischer* did not reject the application of Section 1512(c)(2) to all January 6 prosecutions. Rather, the Supreme Court explained that the government must establish that the defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or other things used in

the proceeding. Although the Court did not consider whether Carnell or Bowman "impaired the availability or integrity for use in an official proceeding of records, documents, objects, or other things used in the proceeding – such as witness testimony or intangible information – or attempted to do so," *Id*. at 2186, the government should not be deprived of its ability to make that showing in a future retrial, if it so chooses. And the government is prepared to seek such a retrial, considering the facts of this case.

The procedural pathway is vacatur. When reconsidering a finding of guilt in light of a potential legal error, the district court sits in a similar position to an appellate court considering the same question. *Bravo-Fernandez v. United States*, 580 U.S. 5, 20 (2016). The ordinary remedy is vacatur, not reversal without an opportunity for retrial. *Id.*; *United States v. Argueta-Rosales*, 819 F.3d 1149, 1151 (9th Cir. 2016) (vacating and remanding for a retrial). That should be the only remedy here.[3]

### c. The Government can Prove Count One under the *Fischer* Elements.

Although dismissal is not the appropriate remedy, the government understands that the Court wants to have confidence that the facts here give rise to a triable case. After vacating the defendants' Count One convictions, the Court should set the case for retrial on this Count. As Justice Jackson suggested in her concurrence in *Fischer*, there may be January 6 cases that satisfy

---

[3] Again, the defendant's framing as a motion to dismiss also fails, because a charging document need only track the language of the statute. *See United States v. Bingert*, 605 F. Supp. 3d 111, 117 (D.D.C. 2022) (a motion to dismiss challenges the adequacy of an indictment on its face and the relevant inquiry is whether its allegations permit a jury to find that the crimes charged were committed); *United States v. McHugh*, 21-cr-453-JDB, 2022 WL 1302880 at *2 (D.D.C. May 2, 2022) (a motion to dismiss involves the Court's determination of the legal sufficiency of the indictment, not the sufficiency of the evidence); *United States v. Puma*, No. 21-CR-454 (PLF), 2022 WL 823079 at *4 (D.D.C. Mar. 19, 2022) ("In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and, more specifically, the <u>language used</u> to charge the crimes") (emphasis in original, quotation marks and citation omitted).

the new requirements. *Fischer*, 144 S. Ct. at 2194. The government believes this to be one of those cases.

As the Court knows, in this case, the defendants invaded the Senate Floor, the very room where the Senators assess the electoral ballots. ECF No. 76-1 at 12 and 76-2 at 11-12. They joined other rioters in rifling through papers on Senators' desks. ECF No. 76-1 at 13. Carnell considered a copy of Senator Ted Cruz's objection to the ballots from Arizona and convinced the other rioters, "Wait, no. That's a good thing. He's on our side. He's with us." *Id*. Bowman then took a picture of a signed letter from Senator Mitt Romney to Vice President Pence, which another rioter had taken from a desk and held up. ECF No. 76-2 at 12. In other words, the defendants understood the nuances of Congress' certification proceeding, appreciated the consequences of their acts, and took acts to both render unavailable the physical items to be used in the proceeding, as well as impaired the integrity of such objects when they remained in the Chamber. Coupled with their intent – and the natural and probable consequences of their acts and state of mind – the evidence reasonably supports a §1512(c)(2) conviction post-*Fischer*.

## Conclusion

The Court should deny the defendants' motions, vacate the defendants' convictions on Count One, and set for retrial on that count.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By: */s/ Tighe Beach*

Tighe Beach
CO Bar No. 55328


Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20001
(240) 278-4348 (Beach)
tighe.beach@usdoj.gov