UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTOPHER CARNELL, et al.,<br><br>Defendants. | Case No. 23-cr-139-BAH |

**GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM**

Pursuant to the Court's November 12, 2024 Minute Order, the government hereby files its supplemental sentencing memorandum in light of the Court's order granting the government's motion to dismiss Count One of the Indictment, charging obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2), against defendants Christopher Carnell and David Worth Bowman ("Defendants"). Although dismissal of Count One results in a revised guideline calculation for each defendant, for the reasons discussed herein, the government stands by its originally requested terms of incarceration of 18 months for Carnell and 15 months for Bowman. The government further requests that each defendant be sentenced to three years of supervised release; $500 in restitution; and a $80 special assessment,[1] as well as a nominal fine for Carnell.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

As described more fully in the government's sentencing memoranda for each defendant filed May 31, 2024, ECF Nos. 110, 111, Defendants were among the few rioters who entered the Senate floor during their participation in the January 6, 2021 attack on the United States Capitol.

---

[1] The government has revised its recommended restitution and special assessment amounts to reflect that Defendants now stand convicted of misdemeanor offenses and no felony.

1

For over half an hour, Defendants were part of a mob that laid siege to the Capitol, joining in the first wave of rioters to enter the Capitol building and participating in the crowd's efforts to overwhelm the police in the Crypt. Carnell traveled through the Capitol while chanting "TREASON, TREASON, TREASON," then pushed with a mob against officers defending the Rotunda Door. Together, Defendants entered the floor of the Senate, where they both stood by as rioters rifled through papers on Senators' desks and discussed objections to the Electoral College certification. Bowman took a photograph of a document another rioter removed from Senator Mitt Romney's desk; he himself took a paper drink coaster from a desk on the Senate floor and brought it home as a souvenir. Later, he asked friends to delete text chains that referenced entering the Capitol.

On February 12, 2024, following a stipulated trial, this Court convicted both Defendants of all six counts on which they were indicted:

- Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2) (Count One);

- Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1) (Count Two);

- Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Three);

- Entering and Remaining on the Floor of Congress, in violation of 40 U.S.C. § 5104(e)(2)(A) (Count Four);

- Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Five); and

- Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Six).

*See* ECF No. 22. Each defendant stipulated to an extensive factual basis that supported his

convictions. *See* ECF Entry, 2/12/24.

After Defendants' convictions but before sentencing, the Supreme Court narrowed the scope of 18 U.S.C. § 1512(c)(2) in *Fischer v. United States*, 603 U.S. 480 (2024), requiring a new legal instruction on Count One. After litigation over the proper mechanism for this Court to remedy this error, *see* ECF Nos. 124, 125, this Court vacated Defendants' convictions on Count One under Federal Rule of Criminal Procedure 52(b). ECF No. 143. On November 12, 2024, the government moved to dismiss Count One. ECF No. 150. The Court granted the government's motion in a minute order dated November 12, 2024.

## II.   REVISED GUIDELINES ANALYSIS

As reflected in the Revised Sentencing Recommendations of the Final Presentence Report, *see* ECF Nos. 151, 152, the revised Sentencing Guidelines range on the remaining Counts Two through Six is as follows:

**Count Two: 18 U.S.C. § 1752(a)(1)—Entering or Remaining in a Restricted Building or Grounds**

| Base Offense Level: | 4 | U.S.S.G. § 2B2.3(a) (trespass) |
|---|---|---|
| Specific Offense Characteristic | +2 | U.S.S.G. § 2B2.3(b)(1)(A)(vii): the trespass occurred "at any restricted buildings or grounds." On January 6, 2021, the U.S. Capitol and its grounds were restricted because protectees of the United States Secret Service were visiting. *See* 18 U.S.C. § 1752(c)(1)(B). |
| Total | 6 | |

**Count Three: 18 U.S.C. § 1752(a)(2)—Disorderly or Disruptive Conduct in a Restricted Building or Grounds**

| Base Offense Level: | 10 | U.S.S.G. §2A2.4(a) (Obstructing or Impeding Officers) |
|---|---|---|
| Total | 10 | |

3

**Counts Four through Six: 40 U.S.C. §§ 5104(e)(2)(A), (D) and (G)—Entering and Remaining on the Floor of Congress, Disorderly or Disruptive Conduct in a Capitol Building and Parading, Demonstrating, or Picketing in a Capitol Building**

Because these offenses are Class B misdemeanors, the Guidelines do not apply to them. *See* 40 U.S.C. § 5109(b); 18 U.S.C. § 3559(a)(7); U.S.S.G. § 1B1.9.

### A. Grouping Analysis

Under U.S.S.G. § 3D1.2, "All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule: (a) When counts involve the same victim and the same act or transaction … [or] (c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline appliable to another of the counts." The government agrees with the U.S. Probation Office that the remaining convictions should be placed into a single group. Therefore, the combined adjusted offense level for both Defendants, which is determined by taking the offense level applicable to the Group with the highest offense level and increasing the offense level by the amount indicated in the table at U.S.S.G. § 3D1.4, is **10.**

### B. Application of § 4C1.1

As stated more fully in the government's original sentencing memorandum, ECF No. 110, Carnell, who pushed against officers attempting to secure the Rotunda Door, is not eligible to receive a two-level decrease in the offense level pursuant to U.S.S.G. § 4C1.1 because he "used violence or credible threats of violence in connection with the offense," *id.* § 4C1.1(3). *See* ECF No. 110 at 20-22. If the Court determines that Section 4C1.1 applies to Carnell, the Court still should vary upward by two levels, as the government has already explained. *See id.*

4

As noted in the government's original sentencing memorandum, ECF No. 111, the government concedes that Bowman is eligible for a two-level decrease in the offense level under U.S.S.G. § 4C1.1. *See id.* at 23. That reduces Bowman's combined offense level to 8, and the resulting Guidelines range to 0 to 6 months.

### C. Estimated Guideline Range

The U.S. Probation Office calculated Carnell's criminal history as category I, which is not disputed. ECF No. 151. Accordingly, based on the government's calculation of Carnell's total adjusted offense level, after acceptance of responsibility, at 8, Carnell's Guidelines imprisonment range is 0 to 6 months' imprisonment.

The U.S. Probation Office calculated Bowman's criminal history as category I, which is not disputed. ECF No. 152. Accordingly, based on the government's calculation of Bowman's total adjusted offense level, after acceptance of responsibility, at 6, Bowman's Guidelines imprisonment range is 0 to 6 months' imprisonment.

### D. Upward Departure or Variance

After determining the defendant's Guidelines range, a court then considers any departures or variances. *See* U.S.S.G. § 1B1.1(a)-(c). Because Defendants' respective Guidelines ranges do not capture the unprecedented and uniquely harmful nature of their crimes, which struck at the heart of our democracy and the rule of law, the government respectfully requests that the Court depart and/or vary upwards from the top of the Guidelines range.

Defendants were avid and willing participants in an unprecedented crime, and their individual conduct on January 6, 2021 separates them from most misdemeanants who entered the

Capitol that day. Defendants joined a mob that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, injured more than one hundred police officers and resulted in more than 2.9 million dollars in losses. Their offense targeted the peaceful transfer of power, an essential government function, and one of the fundamental and foundational principles of our democracy. Like every member of the mob, Defendants "endanger[ed] our democratic processes and temporarily derail[ed] Congress's constitutional work." *United States v. Brock*, 94 F.4th 39, 59 (D.C. Cir. 2024). As Judge McFadden put it to another rioter, "[Y]ou and your fellow rioters were responsible for substantially interfering with the certification, causing a multiple-hour delay, numerous law enforcement injuries and the expenditure of extensive resources." *United States v. Hale-Cusanelli*, 21-cr-37 (TNM), Sent'g Tr. 9/22/22 at 86-87. But Defendants did more. As the Court explained in sentencing Luke Bender and Landon Mitchell, other individuals who breached the Senate floor,

> They walked in, and they spent some time there. They walked all around the Senate Chamber. They looked through papers on the Senate Chamber floor. This … is one of the more sensitive spaces in the Capitol. This differentiates their offense conduct from 90 percent of the defendants connected to the January 6 riot at the U.S. Capitol.

*United States v. Bender*, No. 21-cr-508 (BAH), Sent'g Tr. 4/23/23 at 104-05.

Nothing in Defendants' revised Guidelines calculation reflects their extended unlawful presence in the Capitol – 33 minutes – or their obstruction of the certification during their time on the Senate floor. Defendants would face the same offense level if their crimes had not endangered the democratic process or interfered with the peaceful transfer of power.[2] There is no specific

---

[2] The D.C. Circuit's holding in *United States v. Brock*, 94 F.4th 39 (D.C. Cir. 2024), finding that certain sentencing enhancements did not apply to the Congress's counting and certification of the

6

offense characteristic in the Guidelines for attacking democracy or abandoning the rule of law. "And simply saying, yeah, I know I trespassed, I trespassed, that's not really capturing the impact of what that day meant when all of those members of Congress met there to fulfill their constitutional duty." *United States v. Calhoun*, 21-CR-116-DLF, Sent. Tr. at 85. So sentences within Defendants' Guidelines range here would not "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Indeed, the Court explained as much when imposing sentence for Luke Bender and Landon Mitchell:

> [G]oing in the Senate Chamber where most Senate staff don't even have privileges to be because it is such an important place that you should be humbled to be on because you are exercising the powers of government in a very select group of people who have been elected in each of their states statewide to serve this country.
>
> It is, to me, very important for both specific deterrence and general deterrence that people know, if they are illegally on the Senate Floor and you are caught, you do go to jail, particularly in the midst of a riot when you are interrupting a constitutionally mandated process necessary for the peaceful transfer of power.

*United States v. Bender*, No. 21-cr-508 (BAH), Sent'g Tr. 4/23/23 at 109.

The Guidelines expressly state that an upward departure is warranted where a case presents a circumstance that "may not have been adequately taken into consideration in determining the applicable guideline range" or that "the Commission has not identified in the guidelines but that

---

electoral college votes, despite acknowledging that interference with this process "no doubt endanger[ed] our democratic process and temporarily derail[ed] Congress's constitutional work" demonstrates that the Sentencing Commission failed to anticipate anything like the January 6 riot when drafting the Guidelines. And the Supreme Court's recent decision in *Fischer v. United States,* 603 U.S. 480 (2024) demonstrates that even the criminal code lacks the appropriate tools to fully address the crimes of January 6. *See Fischer*, 603 U.S. at 506 (Barrett, J., dissenting) ("Who could blame Congress for [its] failure of imagination?").

nevertheless is relevant to determining the appropriate sentence." U.S.S.G. § 5K2.0(a)(2). The Guidelines also provide that a departure is warranted when an offense results in "a significant disruption of a governmental function" and the Guidelines do not reflect the appropriate punishment for the offense. U.S.S.G. § 5K2.7.[3] In such circumstances, "the court may increase the sentence above the authorized guideline range to [1] reflect the nature and extent of the disruption and [2] the importance of the governmental function affected."

Moreover, U.S.S.G. § 5K2.21 provides that "[t]he court may depart upward to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as part of a plea agreement in the case, or underlying a potential charge not pursued in the case as part of a plea agreement or for any other reason; and (2) that did not enter into the determination of the applicable guideline range." Here, Carnell was not charged with civil disorder in violation of 18 U.S.C. § 231 for physically pushing other rioters who pushed against officers as they were attempting to re-open the East Rotunda Doors, based on the government's assessment that the full set of charges against Carnell, including Count One, adequately captured the severity of his conduct at the time of charging. This uncharged crime did not enter into the determination of Carnell's guideline range and provides an additional basis for an upward departure in his case.

It is not hyperbole to call what happened on January 6 a crime of historic magnitude. As judges of this district have repeatedly and clearly stated, January 6 was an unprecedented disruption of the nation's most sacred function—conducing the peaceful transfer of power. "The

---

[3] This guideline does not require the government to establish a direct link between the defendant's misconduct and the alleged disruption, nor does it "require that the disruption be of any particular type or consequence." *See United States v. Saani*, 650 F.3d 761, 765–66, 771 (D.C. Cir. 2011).

events that occurred at the Capitol on January 6th will be in the history books that our children read, our children's children read and their children's children read. It's part of the history of this nation, and it's a stain on the history of this nation." *United States v. Miller*, 21-CR-75-RDM, Sent. Tr., at 67. But just as the history books will describe the crimes of January 6, so will they tell the story of how this nation responded. Future generations will rightly ask what this generation did to prevent another such attack from occurring. The damage done to this country on January 6 must be reflected in the sentences imposed on those who caused the damage—it must not be treated as just another crime. As one judge put it, "The effort undertaken by those who stormed the Capitol on January 6 and those who entered the Capitol . . . was to stop the peaceful transfer of power following the legitimate outcome of our presidential election. That's a process that has been a hallmark of American democracy for 200 years. And that effort to reject the outcome of the 2020 presidential election involved an unprecedented and, quite frankly, deplorable attack on our democratic institutions, on the sacred ground of the United States Capitol building, and on the law enforcement officers who were bravely defending the Capitol and those democratic values against the mob of which the defendant was a part." *United States v. Languerand*, 21-CR-353-JDB, Sent. Tr., at 33-34. Again, this Court has made clear that the specific offense conduct of entering the Senate floor must be reflected when applying the sentencing factors set forth in 18 U.S.C. § 3553(a), explaining that, "Going on to the Senate Floor, standing on the dais, having pictures taken, is criminal offense conduct that cries out for both specific and general deterrence and requires jail time." *United States v. Bender*, No. 21-cr-508 (BAH), Sent'g Tr. 4/23/23 at 79; *see also id.* at 102 ("This is not a run-of-the-mill obstruction. This was an obstruction of a

9

constitutionally mandated procedure that happens every four years in the country; this was very serious."). The Court explained in determining an appropriate sentence that defendants like Carnell and Bowman

> are not defendants who simply walked in, walked around, and walked out of the Capitol Building during their 25 minutes unlawfully inside the Capitol Building. This really underestimates and understates the seriousness of the offense conduct to my mind. They are among the very few rioters who went and breached the Senate Chamber.

*Id.* at 104.

Even before *Fischer*, judges of this Court gave significant upward departures and/or variances in January 6 cases when they found the advisory guideline range inadequate. *See, e.g.*, *United States v. Hale-Cusanelli*, 21-CR-37-TNM, 9/22/22 Sent. Tr.; *United States v. Christian Secor*, 21-CR-157-TNM, 10/19/22 Sent. Tr.; *United States v. Hunter and Kevin Seefried*, 21-CR-287-TNM. 10/24/22 Sent. Tr.; *United States v. William Watson*, 21-CR-513-RBW, 3/9/23 Sent. Tr.; *United States v. Riley Williams*, 21-CR-618-ABJ, 3/23/23 Sent. Tr.; *United States v. Hatchet Speed*, 22-CR-244-TNM, 5/8/23 Sent. Tr.

And this Court and others have upwardly departed in January 6 cases precisely because in a post-*Fischer* world, the advisory guideline range did not adequately take into account all of the relevant circumstances. Most recently, in *United States v. Oliveras*, 21-CR-738-BAH, this Court sentenced the defendant on a § 231(a)(3) conviction, a § 111(a)(1) conviction, and four misdemeanors, after his § 1512(c)(2) conviction was dismissed in light of *Fischer*. This Court found an upward departure was warranted under U.S.S.G. § 5K2.7 (Disruption of Governmental Function) because, after *Fischer*, with the dismissal of [the defendant's] 1512(c)(2) conviction, none of the conduct that goes into determining defendant's sentencing guidelines reflect his intent

10

to engage in political violence that poses such a threat to our American democracy… His intent to obstruct Congress in the Electoral College certification by violence, if necessary, go above and beyond what any of his current convictions now take into account." *Oliveras*, 21-cr-738 (BAH), Sent. Tr. at p. 49. This Court noted that "[i]n assessing the extent of the departure, review of how the guidelines for obstruction of an official proceeding at [U.S.S.G. §] 2J1.2 would have applied to defendant [pre-*Brock*] provide a general guide… [and] an upward departure within that range is appropriate." *Id.* at 49-50. The court also noted that it "would impose the same sentence with… an upward variance for the same reasons that are outlined in § 5K2.7 and consideration of the 3553(a) factors." *Id.* at 97. From an advisory Guidelines range of 37-46 months' imprisonment, this Court sentenced Oliveras to 60 months of imprisonment. *See also United States v. Eicher*, 22-cr-38 (BAH), Sent. Tr. 9/15/23 at 50 (applying § 5K2.7 because the defendant "join[ed] a mob, in the center of the melee, and through the sheer numbers and aggressive conduct towards police, breached the Capitol resulting in stopping the legitimate business of Congress for hours"); *United States v. Black*, 21-CR-127-ABJ, Sent. Tr. 5/16/23 at 27 (applying an upward departure pursuant to § 5K2.7 for a January 6 rioter).

In *United States v. Sparks*, 21-CR-87-TJK, Judge Kelly sentenced the defendant convicted of violating both 18 U.S.C. § 1512(c)(2) and 18 U.S.C. § 231. Prior to sentencing, in light of the Supreme Court's *Fischer* decision, the government moved to dismiss the § 1512(c)(2) count, and at sentencing, Sparks faced an advisory guideline range of 15-21 months. Judge Kelly found it important that despite the dismissal of the § 1512(c)(2) count, the defendant's conduct still included "an intent to obstruct or interfere with that proceeding, that important constitutional

11

proceeding" which the court found to be "pretty dark behavior" which "posed a threat to whether our constitutional process will proceed or whether a mob would interfere with that process." *Sparks* Sentencing Tr., at 87-88. Judge Kelly found that the "typical person convicted of [18 U.S.C. § 231] engaged in nothing at all like the attack on the Capitol and the certification." *Id*. at 94-95. Because Sparks' advisory guideline range was driven by the § 231 conviction, that range did not "account for the defendant's intent to obstruct, not just law enforcement officers doing their duty under that statute, but a proceeding, or for the purposes of [U.S.S.G. §] 5K2.7, a governmental function. And not any proceeding, but one foundational to our country's governance." *Id.* at 93. The court found Sparks' intent to "interfere or obstruct with the electoral college vote certification . . . plays an important role in explaining why" Sparks' advisory guideline range did not fully account for his criminal conduct. *Id.* at 94. Accordingly, the court found a significant upward departure was warranted under both U.S.S.G. §§ 5K2.7 and 5K2.21, and in the alternative a variance of equal amount was warranted under the § 3553(a) factors, and sentenced Sparks to 53 months of imprisonment.

Similarly, in *United States v. Robertson*, 21-CR-34-CRC, Judge Cooper resentenced a defendant after dismissal of a § 1512(c)(2) conviction post-*Fischer*. Without that conviction, the court determined that a new advisory guideline range of 37 to 46 months applied. *See Robertson* Sent. Tr., at 59. But Judge Cooper also found that an upward departure was appropriate pursuant to U.S.S.G. § 5K2.7, because Robertson's conduct "resulted in a significant disruption of a governmental function, namely halting of the certification . . . and that is so regardless of whether Section 1512(c) applies." *Id*. at 61. Judge Cooper also found an upward departure appropriate

12

under U.S.S.G. § 5K2.0 because Robertson's conduct was "more harmful or egregious than the typical case represented by the otherwise applicable guideline range." *Id*. After considering the § 3553(a) factors, Judge Cooper sentenced Robertson to 72 months of imprisonment.

Likewise, in *United States v. Dunfee*, 23-CR-36-RBW, Judge Walton sentenced a defendant on a § 231 conviction and a misdemeanor, after his § 1512(c)(2) conviction was dismissed in light of *Fischer*. Judge Walton found an upward departure was warranted under U.S.S.G. § 5K2.7, because Dunfee's actions contributed to and resulted in a significant disruption of the certification of the electoral college vote. Moreover, noting that "the Sentencing Commission did not contemplate the circumstances that occurred on January 6," the court also found that a departure was warranted under U.S.S.G. § 5K2.0(a)(2) because Dunfee's criminal conduct related to "the attempt by a large number of individuals, including the defendant, to stop the peaceful transfer of power." *See United States v. Dunfee*, 23-CR-36-RBW, ECF No. 90, at 2. From an advisory range of 18-24 months, the court sentenced Dunfee to 30 months of imprisonment.

Because the seriousness of Defendants' crimes is not adequately captured by the applicable Guidelines, an upward departure is appropriate here as well. If the Court declines to depart, an upward variance is warranted. An upward variance is appropriate when "the defendant's conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range." *United States v. Murray*, 897 F.3d 298, 308–09 (D.C. Cir. 2018) (cleaned up). While the Supreme Court's decision in *Fischer* has changed defendant's advisory Guideline range, "*Fischer* does not dictate the Court's application of the 18 U.S.C. 3553(a) factors [because] the

13

Court may still consider [defendant's] serious conduct on January 6th, 2021 in its entirety. To reduce [defendant's] sentence . . . would require this Court to take a drastically different view of [defendant's] conduct." *United States v. Hostetter*, 21-CR-392-RCL, ECF 507, Sent. Tr. at 4-5 (cleaned up). Indeed, "*Fischer* does not mean that [the Court] cannot consider at sentencing evidence that establishes that the defendant intended to obstruct Congress' certification of the electoral vote in determining whether . . . the resulting guideline range fully accounts for the criminal conduct." *Sparks* Sentencing Tr. at 95. *See also United States v. Kelly*, 21-CR-708-RCL, ECF 151, Sent. Tr. at 5 ("Nothing about *Fischer* or any hypothetical outcome of [defendant's] appeal bears directly on the severity of his conduct on January 6th . . . . Likewise, the outcome in *Fischer* would not dictate the Court's application of the sentencing factors prescribed in 18 U.S.C. § 3553(a)"); *United States v. Jensen*, 21-CR-6-TJK, Sent. Tr. at 16 ("given the importance and the significance of the proceeding of certifying the Electoral College votes, I would vary upward -- even if this [sentencing enhancement] didn't apply, I would vary upward when considering the nature of the offense.")

In past sentencings, this Court has made clear its view that it "cannot think of many disruptions to government business more substantial than what occurred on January 6, 2021." *Oliveras*, 21-cr-738 (BAH), Sent. Tr. at p. 47. Those were not merely empty words—they were a recognition of the seriousness and unprecedented nature of the riot.

Also unprecedented is the need for January 6 sentences to promote respect for the law and deter future crime. *See* 18 U.S.C. § 3553(a)(2)(A), (B). The January 6 rioters went far beyond merely breaking the law. "There is a difference between breaking the law and rejecting the rule of

14

law." *See* Opening Remarks, January 6 Select Committee (Rep. Kinzinger).[4]

In addition to departing upwards, other courts have varied upward from the advisory guideline range specifically because of the unique and serious nature of the crimes committed that day; this Court should do no less. *See United States v. Reffitt,* 21-CR-32-DLF, Mem. Op. and Order 4/10/24 at 10-11 (upward variance would be justified because "as other judges in this district have noted, the proceedings at issue on January 6, 2021 were of much greater significance than run-of-the-mill 'judicial, quasi-judicial, and adjunct investigative proceedings'"); *United States v. Fonticoba*, 21-CR-638-TJK, Sent. Tr. 1/11/24 at 66–67 (stating that, even if the defendant's § 1512 conviction were invalidated, a significant upward variance was warranted to account for the defendant's intent "to obstruct the proceeding and the nature of the proceeding itself"); *United States v. Secor*, 21-CR-157-TNM, Sent. Tr. 10/19/22 at 53 ("I believe both the seriousness of the event — you obstructed the certification of an official proceeding — and your particular role in it . . . require a significant upward variance"); *United States v. Hale-Cusanelli*, 21-CR-37-TNM, Sent. Tr. 9/22/22 at 87 ("I also believe the extensive damage and injuries caused on January 6th with your fellow rioters require additional punishment beyond what my [guideline] calculation allows.").[5]

---

[4] Available at https://www.cnn.com/2021/07/27/politics/read-kinzinger-remarks-0727/index.html.

[5] The D.C. Circuit has made clear that it "ordinarily presume[s] a district court imposing an alternative non-guidelines sentence took into account all the factors listed in § 3553(a) and accorded them the appropriate significance." *United States v. Warren*, 700 F.3d 528, 533 (D.C. Cir. 2012) (quoting *United States v. Ayers*, 428 F.3d 312, 315 (D.C. Cir. 2005)). But as recently discussed in *United States v. Iracks*, 2024 WL 3308241 (D.C. Cir. July 5, 2024), for a sentence above the applicable Guidelines range, the Sentencing Reform Act provides that the district court

In this case, the government submits that an upward variance and/or departure of 9-12 months is warranted to reach an appropriate sentence. As discussed in the government's sentencing memoranda, ECF Nos. 110, 111, similarly situated defendants to Carnell have received sentences of around 18 months, and similarly situated defendants to Bowman have received sentences of around 15 months.

### E.  Consecutive Sentences

Pursuant to USSG § 5G1.2(d), where the sentence to be imposed exceeds the statutory maximum of any one count, then the remainder of the sentence shall run consecutively, to the extent needed to produce a combined sentence equal to the total punishment. The government respectfully requests that the Court sentence Carnell to a term of 18 months' incarceration, and Bowman to a term of 15 months' incarceration.   As discussed below, to achieve this sentence, the Court would need to impose partially consecutive sentences on some counts.

A federal court "can typically choose whether to run" a defendant's "sentences concurrently or consecutively." *Lora v. United States*, 599 U.S. 453, 455 (2023); *see also Setser v. United States*, 566 U.S. 231, 236 (2012) ("Judges have long been understood to have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to

---

must state "the specific reason for the imposition of a sentence different from that described [in the Guidelines,]" both orally during the sentencing and on a written form appended to the judgment. 18 U.S.C. § 3553(c)(2) (emphasis added). Accordingly, the government requests that the Court make specific findings that this defendant's "conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range" and "explain why the otherwise applicable Guidelines calculation 'does not fully account for the described criminal conduct.'" *United States v. Brown*, 892 F.3d 385, 404–05 (D.C. Cir. 2018) (quoting *Brown*, 808 F.3d at 867, 872 (D.C. Cir. 2015)).

other sentences that they impose...."). While the Sentencing Guidelines default position is that sentences of imprisonment run concurrently, "if the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts *shall* run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment." U.S.S.G. § 5G1.2(d) (emphasis added); *see also United States v. Lafayette,* 337 F.3d 1043, 1050 & n.11 (D.C. Cir. 2003) (explaining that a court may impose consecutive or "stack[ed]" sentences to achieve a total sentence in excess of the statutory maximum on a single count).

Moreover, "although the Guidelines should be the starting point and the initial benchmark, district courts may impose sentences within statutory limits based on appropriate consideration of all of the factors listed in § 3553(a)." *Pepper v. United States*, 562 U.S. 476, 490 (2011). Specifically, 18 U.S.C. § 3584(a) provides that "[i]f multiple terms of imprisonment are imposed on a defendant at the same time ... the terms may run concurrently or consecutively," while Section 3584(b) states that "[t]he court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in [18 U.S.C.] section 3553(a)." District Courts thus have discretion to deviate "from the guidelines' recommendation that a defendant's sentences run concurrently and to impose, instead, consecutive sentences after considering the § 3553(a) factors. *United States v. Lymon*, 905 F.3d 1149, 1153 (10th Cir. 2018).

Here, the § 3553(a) factors counsel that Defendants be sentenced to terms of incarceration above the statutory maximum sentence for Count Two and that their sentences of incarceration run

17

consecutively with Count Three. January 6 was an unprecedented crime, and the magnitude of Defendants' participation in that crime is not accounted for in his Guidelines calculation. *See supra* Section II.D. Defendants' remaining convictions, for misdemeanor offenses, do not adequately reflect the severity of their conduct on January 6, when they were two of just a few rioters who made it onto the Senate floor, seeking actively to interfere with the Electoral College certification.

The government is aware of at least two January 6 cases where a defendant's sentence ran consecutively. *See United States v. Nordean, et. al*, 21-cr-175 (TJK), Sep. 5, 2023 Minute Entry; *United States v. Neely*, 21-cr-0642 (JDB) Sep. 5, 2023 Set. Hrg. Tr. at 42. And at least one judge in this District has indicated that it may be appropriate to impose consecutive sentences where a January 6 defendant's prior felony conviction was subsequently vacated, leaving only misdemeanor convictions. *See United States v. Kelly*, 21-cr-708 (RCL), ECF No. 147 at 10 ("The Court is much likelier to impose a sentence of at least 12 months, and perhaps greater if the Court decides to impose any sentences consecutively. The Court is likely to impose such a sentence even if it requires an upward variance from the guidelines.").

### III.   CONCLUSION

For the reasons set forth above and in the government's sentencing memoranda, ECF Nos. 110, 111, the government recommends that the Court depart or vary upward to sentence Christopher Carnell to 18 months of incarceration; three years of supervised release; $500 in restitution; a nominal fine; and a $80 mandatory special assessment; and David Worth Bowman

to 15 months of incarceration; three years of supervised release; $500 in restitution; and a $80 mandatory special assessment.

                                        Respectfully submitted,

                                        MATTHEW M. GRAVES
                                        UNITED STATES ATTORNEY
                                        D.C. Bar No. 481052

By:    */s/ Monika (Isia) Jasiewicz*
        Monika (Isia) Jasiewicz
        Assistant United States Attorney
        D.C. Bar No. 102491
        United States Attorney's Office
        District of Columbia
        601 D Street NW
        Washington, DC 20530
        (202) 714-6446
        isia.jasiewicz@usdoj.gov

        */s/ Jordan A. Konig*
        JORDAN A. KONIG
        Supervisory Trial Attorney
        Tax Division, U.S. Department of Justice
        Detailed to the U.S. Attorney's Office
        P.O. Box 55, Washington, D.C. 20044
        Jordan.A.Konig@usdoj.gov
        Tel.: 202-305-7917